IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PARKER PELHAM, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>VBIT TECHNOLOGIES CORP., VBIT MINING LLC, ADVANCED MINING GROUP, DANH CONG VO A/K/A DON VO, PHUONG D VO A/K/A KATIE VO, SEAN TU, JIN GAO, LILLIAN ZHAO, AND JOHN DOE INDIVIDUALS 1-10, AND DOE COMPANIES 1-10,<br><br>Defendants. | Civ. Act. No.: 23-162-CFC-SRF<br><br><u>CLASS ACTION</u> |

**CROSS MOTION TO ALLOW ALTERNATIVE SERVICE AND OPPOSITION TO PHUONG D VO'S MOTION TO DISMISS**

Lead Plaintiff Alisha McKellar a/k/a Alisha Lee ("Ms. McKellar" or "Lead Plaintiff") respectfully submits this Cross Motion to Allow Alternate Service and Opposition to Phuong D Vo's Motion to Dismiss.

**I.    The Court Should Authorize Alternate Service**

Lead Plaintiff respectfully requests that the Court allow alternate service on Ms. Vo via her attorneys. As a preliminary matter, Defendant Phuong D Vo ("Ms. Vo") is mistaken about the timeliness of the summons. Ms. McKellar did not file the initial complaint, nor did The Rosen Law Firm, P.A. ("Rosen Law") play a role in filing the initial complaint. Pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), there was a 60-day window for interested parties to move to be appointed lead plaintiff. Ms. McKellar made such a motion (D.I. 7-9). On July 5, 2023, the Court appointed Ms. McKellar lead plaintiff of the class and Rosen Law as interim lead counsel (D.I. 16-17).

1

On July 25, 2023 – *20 days* after Lead Plaintiff was appointed – Rosen Law requested the summonses to be served on the Defendants, including Ms. Vo. *See*, Declaration of Brian Farnan ("Farnan Decl."), Ex. 1. On July 27, 2023, the summons for Ms. Vo was delivered to Richards, Layton & Finger, P.A. ("Richards Layton"). That same day, an attorney from Richards Layton notified Ms. McKellar's local counsel, Farnan LLP ("Farnan"), that Richards Layton did not agree that service was effected. Rosen Law followed up via email, asking Richards Layton if they would accept service on behalf of Ms. Vo. On July 28, 2023, Richards Layton stated that they were not authorized to accept service of the complaint.

Contrary to Defendant's assertion, Rosen Law also made attempts to serve Ms. Vo at her address as listed in the complaint in *Dettmering v. VBit Techs. Corp.*, C.A. No. 22-1482-CFC-SRF (D. Del.) (the "*Dettmering* Action") (D.I. 1) and the summons (D.I. 27). On both addresses, service could not be effected. Farnan Decl., Ex. 1. Indeed, the process server made at least *four* separate attempts to serve Ms. Vo at the address found in D.I. 27 of the *Dettmering* Action. *Id.* It would appear that Ms. Vo is evading service despite Lead Plaintiff's best attempts to properly serve her. As such, Lead Plaintiff respectfully requests that the Court allow alternate service via Ms. Vo's attorneys.

Federal Rules of Civil Procedure ("FRCP") Rule 4(e)(1) states that an individual in the United States may be served by "following state law for serving a summons [. . .] where service is made." Pennsylvania rules allow for service by order of the Court when service cannot be made under applicable rules. 231 Pa. Code § 430 (a) ("If service cannot be made under the applicable rule the plaintiff may move the court for a special order directing the method of service. The motion shall be accompanied by an affidavit stating the nature and extent of the investigation which has been made to determine the whereabouts of the defendant and the reasons why service cannot be

made.") *See*, Farnan Decl., Ex. 2. Therefore, it is permissible for the Court to order service upon Ms. Vo via her attorneys.

Numerous courts, including in this Circuit, have found that service upon a defendant through its counsel satisfies constitutional due process requirements. In *Marlabs Inc. v. Jakher*, the court found that service upon a defendant located in India through his attorney "comports with constitutional due process, which requires, 'notice reasonably calculated, under all the circumstances, to apprise [him] of the pendency of the action and afford [him] an opportunity to present [his] objections.'" No. 07–cv–04074 (DMC)(MF), 2010 WL 1644041, at *3 (D.N.J. Apr. 22, 2010) (quoting *Mullane*, 339 U.S. at 314)*; see also Prediction Co. LLC v. Rajgarhia*, No. 09 Civ. 7459(SAS), 2010 WL 1050307, at *5-6 (S.D.N.Y. March 22, 2010) (permitting an individual located in India to be served through counsel). And, Courts in the District have allowed service upon an attorney to avoid further delay. *See e.g., LG Elecs., Inc. v. ASKO Appliances, Inc.*, No. 08–828 (JAP), 2009 WL 1811098 at *13–14 (D. Del. June 23, 2009) (determining that service upon a foreign defendant through counsel was appropriate as "this Court finds that, pursuant to Rule 4(f)(3), service upon an attorney is warranted in order to prevent further delays in litigation").

Here, Plaintiffs seek to have the Court authorize service on Ms. Vo by permitting service upon her litigation counsel. Ms. Vo is already aware of this lawsuit. Thus, service in that manner is "reasonably calculated, under all the circumstances, to apprise [defendant] of the pendency of the action and afford [defendant] an opportunity to present [her] objections." *Bravetti*, 2013 WL 6501740 at *4 (quoting *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950)). *See also Marlabs*, 2010 WL 1644041 at *3.

Therefore, Lead Plaintiff respectfully requests the Court deny Ms. Vo's Motion to Dismiss and allow Lead Plaintiff to serve the complaint and summons on Ms. Vo through her attorneys.

**II.      The Motion to Dismiss Should Not Be Decided Until After the Amended Complaint**

In securities class action cases, lead plaintiffs regularly file an amended complaint upon lead plaintiff appointment—particularly where, as here, Lead Plaintiff has not previously filed any complaint. *In re: Walmart Inc. Securities Litigation*, C.A. No. 21-00055-CFC (D. Del.), D.I. 1, 20, 21, 29. Here, Lead Plaintiff served all defendants except Ms. Vo, and was actively working to serve her. Lead Plaintiff did not have a chance to meet and confer with Defendants' counsel on a timeline for the amended complaint and briefing the motion to dismiss due to Ms. Vo evading service. As such, Lead Plaintiff respectfully requests that the Court not address Ms. Vo's Motion to Dismiss until after Lead Plaintiff has had a chance to amend the initial complaint.

**III.     In the Alternative, the Motion to Dismiss Should be Denied**

    **a.  Ms. Vo Played a Key Role in VBit**

Defendant correctly states that a "job title alone is insufficient to establish the exempt status of an employee." (D.I. 20 at 9). Defendants allege that, based on Ms. Vo's employment contract with VBit Technologies Corp. ("VBit"), her duties included, "1) Train members of the admin support team; 2) lead the admin team in their daily duties; 3) help answer customer support tickets; and 4) help develop training manuals for new hires on daily admin team processes." (D.I. 20 at 9). In essence, Defendant alleges that she played solely an administrative role and had no bearing on the operations of VBit.

Lead Plaintiff strongly disputes Ms. Vo's narrative. For a motion to dismiss, the Court must take factual allegations in the complaint as true. The initial complaint alleges that Ms. Vo was "a leader in the organization", "exercised control over the Company Defendants", and "directed and/or authorized, directly or indirectly, the sale and solicitation of Mining Contract investments to the public." The initial complaint also references a speech Ms. Vo gave at VBit's first annual

4

gala. D.I. 1, ¶40. The speech can be seen, in part, on Advanced Mining's YouTube channel.[1] In the speech, Ms. Vo makes numerous comments about VBit's business that fall outside her purported limited administrative scope. She states that VBit, in "only a year" had "2,000" members sign up, and that these members were from "Philly [Philadelphia], Arizona, California, Canada, Hong Kong, [and] Philippines[.]" Ms. Vo states that "sales increase everyday" and that "half of [the] paid members have multiple packages." She states these sales are not "something that can be done with Katie or Don [Defendant Danh Cong Vo] alone." Furthermore, Ms. Vo had been awarded a trophy or award, visible in the speech, which she mentions. It strains belief that Ms. Vo, in her role merely focusing on administrative duties, would have access to information to make these statements, or to compare herself to the CEO.

It is not unusual, in technology start-up companies, for employees to perform duties outside the scope of their employment agreement. And since VBit was never a publicly traded company, their internal hierarchy is unknown. While Ms. Vo's employment agreement is instructive, it is not the only source of what her duties were at VBit. Her speech at VBit's first gala, the award she was presented, and her speech all suggest that she played a role far more important than just administrative duties. Furthermore, this is a question of fact, and therefore inappropriate to decide in a motion to dismiss. *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1421 (3d. Cir. 1997) (factual questions inappropriate to answer at motion to dismiss stage).

  b. **Ms. Vo's Relationship with VBit Mining and Advanced Mining Are Minimally Relevant**

Ms. Vo's employment status with VBit Mining LLC ("VBit Mining") and Advanced Mining Group ("Advanced Mining") is irrelevant. Defendant admits she was employed at VBit. As laid out in the initial complaint, VBit Mining was a subsidiary of VBit. D.I. 1, ¶17. Similarly,

---

[1] https://www.youtube.com/watch?v=xjCXIjE_e8k, last accessed Nov. 28, 2023.

the initial complaint alleges that Advanced Mining is likely an alter ego of VBit, rather than a foreign entity that purchased VBit. ¶¶18, 93. Whether Ms. Vo was really only an administrative employee or a leader and director at VBit remains to be seen, a question of fact that cannot be decided at this stage.

### c. Delaware Has Personal Jurisdiction Over Ms. Vo

Ms. Vo is a defendant in a Delaware case stemming from the same set of facts, but brought under different allegations. *See*, the *Dettmering* Action. *Pfizer Inc. v. Sandoz Inc.*, 2010 WL 256548 (D. Del. Jan. 20, 2010) (denying motion to transfer by a defendant despite arguments of a lack of personal jurisdiction because, *inter alia*, defendant appeared before the court repeatedly without contesting jurisdiction and there were related cases in the district).

Furthermore, the initial complaint alleges that Ms. Vo was a key figure in VBit. In a motion to dismiss, the Court must accept plaintiff's factual allegations as true. Here, Ms. Vo's leadership role in VBit, a Delaware corporation, is enough to confer this Court with personal jurisdiction over her. *Snowstorm Acquisition Corp. v. Tecumseh Products Co.*, 739 F.Supp.2d 686, 700-01 (D. Del. Sep. 21, 2010) (finding personal jurisdiction over an individual defendant who had "no contact" with Delaware in an individual capacity and "very little" contacts in a corporate capacity); *FS Photo, Inc. v. PictureVision, Inc.,* 48 F.Supp.2d 442, 445 (D.Del.1999) ("The due process requirement of *International Shoe v. Washington*, that a defendant have "minimum contacts" with a particular district or state for purposes of personal jurisdiction, is not a limitation imposed on the federal courts under Section 27 in a federal question case. Due process concerns under the Fifth Amendment are satisfied if a federal statute provides for nationwide service of process in federal court for federal question cases.") (quote cleaned up).

### d. The Complaint Does Not Rely on Group Pleading

As stated before, Lead Plaintiff intends to amend the initial complaint. Lead Plaintiff was unable to set a schedule for filing the amended complaint and briefing the motion to dismiss because, despite Lead Plaintiff's best efforts, Ms. Vo evaded service. As such, Ms. Vo's concerns about group pleading is premature.

Additionally, the initial complaint does not rely on group pleading as to Ms. Vo. The initial complaint contains particularized allegations as to Ms. Vo. D.I. 1, at ¶¶ 20, 45; *see also*, Phuong D Vo's Motion to Dismiss, D.I. 20, at 5. The so-called "lumping" of defendants into groups was a sensible way to organize specific allegations against relevant defendants, and is often used in securities class action complaints. As stated above, all of Ms. Vo's concerns regarding group pleading is premature, as Lead Plaintiff hasn't filed her amended complaint yet.

### IV.   Conclusion

Lead Plaintiff has made good faith efforts to serve Ms. Vo – through her attorneys and at her various known addresses. That Ms. Vo evaded service – which was attempted *four* times – should not be rewarded with a dismissal of the claims against her. As to Ms. Vo's other grounds for dismissal – they are either questions of fact inappropriate for the motion to dismiss stage or premature and will be addressed in Lead Plaintiff's amended complaint. For the foregoing reasons, Lead Plaintiff respectfully requests that the Court authorize alternative service on Ms. Vo via her attorneys and deny her motion to dismiss.

Dated: November 29, 2023                    Respectfully submitted,

**FARNAN LLP**

/s/ Brian E. Farnan
Brian E. Farnan, Esq. (Bar No. 4089)
Michael J. Farnan, Esq. (Bar No. 5165)
919 North Market St., 12th Floor
Wilmington, DE 19801
Telephone: (302) 777-0300

Fax: (302) 777-0301
Email: bfarnan@farnanlaw.com
Email: mfarnan@farnanlaw.com

*[Proposed] Liaison Counsel for Plaintiffs and the Class*

**THE ROSEN LAW FIRM, P.A.**

Laurence M. Rosen, Esq.
Phillip Kim, Esq.
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: lrosen@rosenlegal.com
Email: pkim@rosenlegal.com

*[Proposed] Lead Counsel for Plaintiff and the Class*