## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PARKER PELHAM, Individually and on Behalf of All Other Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| VBIT TECHNOLOGIES CORP., VBIT MINING LLC, ADVANCED MINING GROUP, DANH CONG VO a/k/a DON VO, PHUONG D VO a/k/a KATIE VO, SEAN TU, JIN GAO, LILLIAN ZHAO, and JOHN DOE INDIVIDUALS 1-10, and DOE COMPANIES 1-10, | ) ) ) ) ) ) ) ) | C.A. No. 23-162-JLH-SRF |
| Defendants. | ) ) | |

## DEFENDANT PHUONG D. VO A/K/A KATIE VO'S OPENING BRIEF IN SUPPORT OF HER MOTION TO DISMISS

OF COUNSEL:

Mitchell S. Kim
Danielle M. Mayer
BUCHALTER
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA 90017
(213) 891-0700
mkim@buchalter.com
dmayer@buchalter.com

Travis S. Hunter (#5350)
Jessica E. Blau (#7163)
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
(302) 651-7700
hunter@rlf.com
blau@rlf.com

*Attorneys for Defendant Phuong D Vo a/k/a Katie Vo*

Dated: August 26, 2024

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

SUMMARY OF ARGUMENT .......................................................................................... 1

NATURE AND STAGE OF THE PROCEEDINGS ......................................................... 2

STATEMENT OF FACTS ................................................................................................. 3

    I.      ALLEGATIONS IN THE AMENDED COMPLAINT ......................................... 3

    II.    MS. VO HAS NEVER BEEN AN OFFICER, DIRECTOR, OR MANAGING AGENT OF VBIT TECH, VBIT MINING, OR ADVANCED MINING .................. 5

ARGUMENT ..................................................................................................................... 6

    I.      MS. VO'S EMPLOYMENT WITH VBIT TECH DOES NOT LEAD TO LIABILITY AS TO VBIT TECH, VBIT MINING, OR ADVANCED MINING ....................................................................................................................... 7

        A.    Ms. Vo Only Ever Had An Administrative Role At VBit Tech ............................. 7

        B.    Ms. Vo Has Never Been Employed By VBit Mining Or VBit DC ....................... 9

        C.    Ms. Vo's Prior Marriage To Mr. Vo, The Co-Founder And Former CEO Of VBit Tech, Does Not Create Liability For Ms. Vo .................................................. 9

    II.    THIS COURT LACKS PERSONAL JURISDICTION OVER MS. VO AND THEREFORE ALL OF PLAINTIFFS' CLAIMS AGAINST MS. VO SHOULD BE DISMISSED ........................................................................................ 10

        A.    Delaware's Long Arm Statute Does Not Authorize An Exercise Of Jurisdiction Over Ms. Vo, And, Therefore Any Exercise of Jurisdiction Violates Due Process ............................................................................................. 10

    III.   THE AMENDED COMPLAINT FAILS TO SATISFY FEDERAL RULE OF CIVIL PROCEDURE 8(A) .................................................................................... 12

    IV.   COUNT 1: PLAINTIFFS FAIL TO STATE A CLAIM FOR UNREGISTERED OFFER AND SALE OF SECURITIES IN VIOLATION OF §§5 AND 12(A)(1) OF THE SECURITIES ACT ................................................ 13

    V.    COUNTS 2 AND 4: PLAINTIFFS FAIL TO STATE A CLAIM FOR VIOLATION OF §§15 AND 20(A) OF THE SECURITIES ACT ........................... 15

    VI.   COUNT 3: PLAINTIFFS FAIL TO STATE A CLAIM FOR VIOLATION OF §10(B) OF THE EXCHANGE ACT AND RULE 10B-5 ........................................ 16

    VII.  COUNT 5: PLAINTIFFS FAIL TO STATE A CLAIM FOR UNJUST ENRICHMENT/RESTITUTION ............................................................................ 17

CONCLUSION ................................................................................................................ 18

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .......................................................................................................1, 12

*Associated Gen. Contractors v. Cal. State Council of Carpenters*,
    459 U.S. 519 (1983) ............................................................................................................7

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ..........................................................................................................12

*In re Craftmatic Sec. Litig.*,
    890 F.2d 628 (3d Cir. 1989) ..............................................................................................14

*Fischbein v. Olson Research Grp., Inc.*,
    959 F.3d 559 (3d Cir. 2020) ................................................................................................6

*Fowler v. UPMC Shadyside*,
    578 F.3d 203 (3d Cir. 2009) ..............................................................................................12

*GSC Partners CDO Fund v. Washington*,
    368 F.3d 228 (3d Cir. 2004) ..............................................................................................17

*Hishon v. King & Spalding*,
    467 U.S. 69 (1984) ..............................................................................................................7

*Jeffreys v. Exten*,
    784 F. Supp. 146 (D. Del. 1992) .......................................................................................10

*Kersh v. General Council of Assemblies of God*,
    804 F.2d 546 (9th Cir. 1986) .............................................................................................15

*Mammana v. Fed. Bureau of Prisons*,
    934 F.3d 368 (3d Cir. 2019) ................................................................................................6

*Max Daetwyler Corp. v. Meyer*,
    762 F.2d 290 (3d Cir. 1985) ..............................................................................................10

*Moore v. Kayport Package Express, Inc.*,
    885 F.2d 531 (9th Cir. 1989) .............................................................................................14

*Nemec v. Shrader*,
    991 A.2d 1120 (Del. 2010) ...............................................................................................17

*Nespresso USA, Inc. v. Ethical Coffee Co., SA*,
    263 F. Supp. 3d 498 (D. Del. 2017) ..................................................................................10

i

*Oakwood Labs. LLC v. Thanoo,*
 999 F.3d 892 (3d Cir. 2021)........................................................................................7, 14

*Oliver v. Galerman,*
 2022 WL 287907 (Del. Super. Ct. Jan. 31, 2022) .......................................................10

*Phillips v. Cnty. of Allegheny,*
 515 F.3d 224 (3d Cir. 2008)..........................................................................................13

*Pinter v. Dahl,*
 486 U.S. 622 (1987).......................................................................................................14

*In re Reliance Sec. Litig.,*
 91 F.Supp.2d 706 (D.Del. 2000)....................................................................................15

*In re Rockefeller Center Prop. Sec. Litig.,*
 311 F.3d 198 (3d Cir. 2002)...........................................................................................17

*SC Botanicals, LLC v. Intragenix Hldgs., LLC,*
 2021 WL 2156503 (D. Del. May 27, 2021)...................................................................11

*Shapiro v. UJB Fin. Corp.,*
 964 F.2d 272 (3d Cir. 1992)...........................................................................................15

*In re Suprema Specialties, Inc. Securities Litigation,*
 438 F.3d 256 (3d Cir. 2006)...........................................................................................16

*Wanetick v. Mel's of Modesto, Inc.,*
 811 F.Supp. 1402 (N.D. Cal. 1992)...............................................................................15

*Wool v. Tandem Computers, Inc.,*
 818 F.2d 1433 (9th Cir. 1987) .......................................................................................15

**STATUTES & RULES**

29 C.F.R. § 541.2 ...................................................................................................................8

8 *Del. C.* § 141 .....................................................................................................................8

8 *Del. C.* § 142 .....................................................................................................................8

10 *Del. C.* § 3104 ................................................................................................................10

15 U.S.C.§ 77e.....................................................................................................................13

15 U.S.C. § 77l....................................................................................................................14

15 U.S.C. § 78u-4 ................................................................................................................17

17 C.F.R. § 240.10b–5 ........................................................................................2, 16, 17

Fed. R. Civ. P. 4 ...........................................................................................................10

Fed. R. Civ. P.  8 ..........................................................................................................12

Fed. R. Civ. P. 12 .........................................................................................................12

Rule 10b-5 ...............................................................................................................2, 16

Securities Act of 1933 ........................................................................................ *passim*

Securities Exchange Act of 1934 .......................................................................... *passim*

## SUMMARY OF ARGUMENT

Although Plaintiffs attempt to frame the instant matter as one that is "complex," such is not the case as it specifically pertains to Defendant Phuong "Katie" Vo ("Ms. Vo"). As emphasized in Ms. Vo's Motion to Dismiss (D.I. 20), Ms. Vo's role at VBit Tech was unequivocally limited to that of an administrative role. (D.I. 21, Declaration of Phuong "Katie" Vo ("Vo Decl."), ¶¶ 1, 3; Vo Decl., Ex. A ("Employment Contract").[1] In an attempt to remedy their deficient pleading, Plaintiffs relied on overbroad and exaggerated allegations in their Amended Complaint to barely overcome the required pleading standards. Yet, Plaintiffs' so-called factual allegations against Ms. Vo that supposedly form the basis for their legal claims still fail to provide the necessary details to serve as sufficient facts to support their claims against Ms. Vo. Therefore, any "complex" securities and even contractually related allegations primarily directed at the corporate Defendants fail to have any legal relevance to Ms. Vo.

Additionally, the Federal Rules of Civil Procedure provide for notice pleading. Although a complaint may state only a short and plain statement of the claim showing that the relevant party is entitled to relief, it must contain facts sufficient to give rise to a reasonable inference that each named defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Therefore, despite the liberal pleading standards provided by the Federal Rules, a complaint must still place a defendant on notice of the claims against it. The standard applied to this Amended Complaint is no different.

---

[1] References to "Vo Decl." are citations to the Declaration of Katie Vo filed in support of her Opening Brief in Support of Motion to Dismiss for Insufficiency of Service of Process found at D.I. 21.

References to "Vo Decl. Ex. A. are citations to Exhibit A ('Employment Contract") to the Declaration of Katie Vo filed in support of her Opening Brief in Support of Motion to Dismiss for Insufficiency of Service of Process found at D.I. 21.

Likewise, Plaintiffs' fail to provide the requisite facts to support each of their Counts alleged against Ms. Vo. Although Plaintiffs attempt to group all named Defendants as if all alleged facts and legal theories apply identically against all Defendants, such haphazard pleading effort is futile in surviving a motion to dismiss.

## NATURE AND STAGE OF THE PROCEEDINGS

On February 13, 2023, Plaintiff Parker Pelham ("Plaintiff") filed a class action complaint against VBit Technologies Corp. ("Vbit Tech"), Vbit Mining LLC ("Vbit Mining"), Advanced Mining Group ("Advanced Mining"), Danh Cong Vo a/k/a Don Vo ("Mr. Vo"), Phuong D. Vo a/k/a Katie Vo ("Ms. Vo"), Sean Tu ("Mr. Tu"), Jin Gao ("Mr. Gao"), and Lillian Zhao ("Ms. Zhao") (the "Complaint"). (D.I. 1). The Complaint alleges four causes of action arising out of alleged securities law violations by generalized Defendants.

Plaintiff's claims centered around a purported illegal Bitcoin-mining Ponzi scheme. Specifically, Plaintiff's Complaint alleged the following causes of action: (1) Unregistered Offer and Sale of Securities in Violation of §§5 and 12(a)(1) of the Securities Act; (2) Violation of §15 of the Securities Act; (3) Violation of §10(b) of the Exchange Act and Rule 10b-5; (4) Unjust Enrichment/Restitution.

After Ms. Vo filed a Motion to Dismiss the initial Complaint, Plaintiffs filed an Amended Complaint on July 29, 2024 alleging the same 4 out of the 5 claims as the initial Complaint. (D.I. 34). The only new claim is the alleged violations of Section 20(a) of the Exchange Act against the Individual Defendants, which is added as Count 4 of the Amended Complaint. *Id*. Ms. Vo once again moves to dismiss the Amended Complaint on three (3) grounds: (1) This Court lacks personal jurisdiction over Ms. Vo, (2) the Amended Complaint's "group pleading" fails to satisfy Federal Rule of Civil Procedure 8, and (3) the Amended Complaint fails to state a claim upon

which relief may be granted as to all five Counts alleged against Ms. Vo.  Ms. Vo respectfully submits this opening brief in support of her Motion to Dismiss (the "Motion").

## STATEMENT OF FACTS

Vbit Tech, Vbit Mining, and Advanced Mining are all companies involved in cryptocurrency mining. Specifically, these companies sell Bitcoin-mining hardware and offer mining-equipment hosting, which allows customers to mine their own cryptocurrency.

## I.    ALLEGATIONS IN THE AMENDED COMPLAINT

According to the Amended Complaint, "Defendants have sold unregistered securities in violation of the Securities Act of 1933 ('Securities Act')." Am. Compl., ¶ 16. Plaintiffs also allege that, "Defendants have engaged in securities fraud in violation of the Securities Exchange Act of 1934 ('Exchange Act')." *Id.*  Further, Plaintiffs allege that, "the Individual Defendants are all culpable participants in Defendants' fraudulent scheme, committing acts of misfeasance such that the Individual Defendants should be held personally liable for the misconduct of the Company Defendants." *Id*.

Plaintiffs allege that, "Plaintiffs entered into investment contract agreements with Defendants VBit, Tech, VBit Mining, and Advanced Mining whereby Defendants would purportedly host physical Bitcoin mining equipment at facilities it owned, which in turn would allow Plaintiff to mine and procure Bitcoin." *Id.* ¶ 7.

Plaintiffs allege that VBit Tech is a Delaware corporation and that VBit Mining, also a Delaware corporation, is a direct subsidiary of VBit Tech. *Id.* ¶¶ 26-27. Plaintiffs also allege that VBit DC is another subsidiary of VBit Tech.  *Id.* ¶28.  Plaintiffs further allege that Advanced Mining "operates as the alter ego or instrumentality of VBit Tech, VBit Mining, VBit DC, and/or the Individual Defendants." *Id.* ¶ 29.

According to the Amended Complaint, customers experienced delays in withdrawing Bitcoin from their virtual wallets in May 2022. *Id.* ¶ 95. Plaintiffs allege that on or around June 1, 2022, VBit/Advanced Mining stopped processing all withdrawals. *Id.* ¶ 96. Further, the Amended Complaint alleges that Plaintiffs' virtual wallets have been frozen since June 2022 and that Plaintiffs cannot withdraw Bitcoin or process any transactions. *Id.*

As alleged in the Amended Complaint, Advanced Mining sent its customers an email on June 27, 2022 stating that it could "no longer service the United States market." *Id.* ¶ 103. According to the Amended Complaint, Advanced Mining informed the U.S. customers that they would be able to keep their earnings, but would have to "relinquish ownership of their mining hardware." *Id.* ¶ 104. Plaintiffs then allege that Plaintiffs are still not able to withdraw Bitcoin from their  virtual wallets in contrast to Defendants' alleged representations that Plaintiffs would be able to withdraw at any time." *Id.* ¶ 113.

The only allegations in the Amended Complaint that even remotely concern Ms. Vo are as follows:

(1)    "Defendant Phuong D Vo a/k/a Katie Vo is an executive who was touted as an integral part of VBit's formation and development.  Ms. Vo is married to Mr. Vo. Ms. Vo is credited with inspiring Mr. Vo to launch VBit.  Ms. Vo was the "Operations Director" at VBit.  Her duties in that role included training and overseeing the administrative support team that was responsible for responding to customer support requests.  Ms. Vo exercised control over the Company Defendants and directed and/or authorized, directly or indirectly, the sale and solicitation of Mining Contract investments to the public." *Id.* ¶ 31.

(2)    "In a speech given at a 2019 gala to celebrate VBit's first year, Ms. Vo referred to VBit as her 'child.' She explained that VBit 'is not something that can be done with Katie or Don alone.' She also provided detailed information about the company's increasing, if fraudulent, sales and the types of packages that victims were purchasing, showing a deep and detailed understanding of the operation of the company.'" *Id.* ¶ 54.

(3)    "In her role, Ms. Vo operated the main interface between VBit and customers and was responsible for misrepresentations made to customers by the VBit support team to maintain the fraudulent scheme.  Following the purported sale of VBit to Advanced Mining in early 2022, Ms. Vo continued in her role as Operations Director at Advanced Mining, a position that would report directly to the COO according to internal documents from that time." *Id*. ¶ 55.

(4)    "Around the same time as the fraudulent Advanced Mining transaction, Don Vo paid Ms. Vo significant sums in cryptocurrency from the account that Mr. Vo used to manage VBit's cryptocurrency assets."  *Id.* ¶ 56.

## II.    MS. VO HAS NEVER BEEN AN OFFICER, DIRECTOR, OR MANAGING AGENT OF VBIT TECH, VBIT MINING, OR ADVANCED MINING

Ms. Vo has had only an administrative role at VBit Tech. Ms. Vo signed an Employment Contract with VBit Tech on or about December 28, 2018 for full-time employment starting on January 1, 2019. Vo Decl. ¶¶ 1, 3; Vo Decl., Ex. A. This Employment Contract was specifically between VBit Tech and Phuong Vo (AKA Katie Vo). Vo Decl. ¶¶ 1, 3; Employment Contract. The Employment Contract identifies Ms. Vo's job as "permanent full-time employment with the Employer" with an internal job title of Operations Director. Vo Decl. ¶ 4; Employment Contract.

At no point in time was Ms. Vo employed by VBit Mining or Advanced Mining. Vo Decl. ¶ 9; Employment Contract.

The scope of Ms. Vo's employment at VBit Tech was limited to an administrative role. Vo Decl. ¶¶ 1, 3; Employment Contract. Her Employment Contract details her administrative job duties as follows:

- Train members of the Admin support team;

- Lead the Admin team in their daily duties;

- Help answer customer support tickets; and

- Help develop training manuals for new hires on daily admin team processes.

Vo. Decl. ¶ 5; Vo Decl. Ex. A.

Further, Ms. Vo's Employment Contract states, "The Employee agrees to be employed on the terms and conditions set out in this [Employment Contract]. The Employee agrees to be subject to the general supervision of and act pursuant to the orders, advice and direction of the Employer." Vo Decl. ¶ 6; Employment Contract. Accordingly, Ms. Vo's role at VBit Tech was limited to an administrative-assistant role; Ms. Vo was not an officer, a director, or a manager at VBit Tech, as she was never given such authority. Vo Decl. ¶ 7-8; Employment Contract.

## ARGUMENT

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372 (3d Cir. 2019) (internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 678). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fischbein v. Olson Rsch. Grp., Inc.*, 959 F.3d 559, 561 (3d Cir. 2020) (citation omitted).

In addition, courts "disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Oakwood Labs. LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (citation omitted).

The "court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). However, it is not appropriate for the court to assume that plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

## I.     MS. VO'S EMPLOYMENT WITH VBIT TECH DOES NOT LEAD TO LIABILITY AS TO VBIT TECH, VBIT MINING, OR ADVANCED MINING

Ms. Vo has never been an officer, director, or managing agent of VBit Tech, VBit Mining, VBit DC, or Advanced Mining.

### A.     Ms. Vo Only Ever Had An Administrative Role At VBit Tech

Ms. Vo is not an officer of VBit Tech. The officers of a Delaware corporation, such as VBit Tech, are appointed (and removed) by the board of directors. Officers are in charge of managing the company day-to-day. According to the Delaware General Corporation Law ("DGCL"):

> (a) Every corporation organized under this chapter shall have such officers with such titles and duties as shall be stated in the bylaws or in a resolution of the board of directors which is not inconsistent with the bylaws and as may be necessary to enable it to sign instruments and stock certificates which comply with §§ 103(a)(2) and 158 of this title. One of the officers shall have the duty to record the proceedings of the meetings of the stockholders and directors in a book to be kept for that purpose. Any number of offices may be held by the same person unless the certificate of incorporation or bylaws otherwise provide.

7

(b) Officers shall be chosen in such manner and shall hold their offices for such terms as are prescribed by the bylaws or determined by the board of directors or other governing body. Each officer shall hold office until such officer's successor is elected and qualified or until such officer's earlier resignation or removal. Any officer may resign at any time upon written notice to the corporation.

8 *Del. C.* § 142(a)-(b).

Ms. Vo is not a director of VBit Tech. The board of directors is the governing body of a Delaware corporation. According to the DGCL, the board of directors of a corporation shall consist of one or more members, each of whom shall be a natural person. The number of directors shall be fixed by, or in the manner provided in, the bylaws, unless the certificate of incorporation fixes the number of directors, in which case a change in the number of directors shall be made only by amendment of the certificate. Directors need not be stockholders unless so required by the certificate of incorporation or the bylaws. The certificate of incorporation or bylaws may prescribe other qualifications for directors. 8 *Del. C.* § 141(b).

A job title alone is insufficient to establish the exempt status of an employee. The exempt or nonexempt status of any particular employee must be determined on the basis of whether the employee's salary and duties meet the requirements of the regulations in this part. 29 C.F.R. § 541.2. Here, Ms. Vo's official position with VBit Tech was Operations Director. *See* Employment Contract. As an Operations Director, Ms. Vo's specific job duties included the following (in no particular order): 1) Train members of the admin support team; 2) lead the admin team in their daily duties; 3) help answer customer support tickets; and 4) help develop training manuals for new hires on daily admin team processes. *Id.* None of the foregoing administrative job duties allowed Ms. Vo to have any access to or knowledge of the details of her former employer's executive or operation details. In essence, Ms. Vo was only able to work within the specific confines of her administrative job duties not just because of the clear terms set forth in her

8

Employment Contract, but also because she did not and could not engage in any other duties due to her lack of knowledge in other areas of VBit Tech.

The job duties detailed in Ms. Vo's employment agreement clearly evidence a role involving administrative assistance to VBit Tech and are narrow in scope. Accordingly, Ms. Vo cannot be liable for any action or inaction by VBit Tech since she is not an officer, director, or managing agent of VBit Tech.

### B.    Ms. Vo Has Never Been Employed By VBit Mining Or VBit DC

Ms. Vo's Employment Contract was specifically entered into with VBit Tech. Vo Decl., ¶ 3, Ex."A. The allegations in the Amended Complaint have nothing to do with Ms. Vo, an administrative employee of VBit Tech, who cannot assume any liability related to VBit Tech, VBit Mining, VBit DC, or Advanced Mining. Again, Ms. Vo is not an officer, director, or managing agent of VBit Tech and therefore cannot have liability imposed on her no matter what VBit Tech, VBit Mining, VBit DC, or Advanced Mining did or did not do as alleged in the Amended Complaint.

### C.    Ms. Vo's Prior Marriage To Mr. Vo, The Co-Founder And Former CEO Of VBit Tech, Does Not Create Liability For Ms. Vo

Ms. Vo was once married to Mr. Vo, but was separated for some time and recently finalized her divorce from Mr. Vo. Vo Decl., ¶ 10. Needless to say, Ms. Vo's prior marital status has absolutely no relation to any allegations Plaintiff may or may not assert against any of the named Defendants, let alone against Ms. Vo.  In fact, there is no such legal authority that allows one's prior marital status to be a requirement or even a factor to prove one's liability in a civil setting. Thus, Ms. Vo's prior marital status cannot serve as any form of evidence that can somehow tie Ms. Vo to the instant matter.

## II.   THIS COURT LACKS PERSONAL JURISDICTION OVER MS. VO AND THEREFORE ALL OF PLAINTIFFS' CLAIMS AGAINST MS. VO SHOULD BE DISMISSED

On a motion to dismiss for lack of personal jurisdiction, the burden is on the plaintiff to make a prima facie showing that the exercise of personal jurisdiction over the nonresident defendants is authorized by Delaware's long-arm statute, 10 *Del. C.* § 3104, and is consistent with due process. *Oliver v. Galerman*, No. N21C-10-077-CLS, 2022 WL 287907, at *1 (Del. Super. Ct. Jan. 31, 2022). To satisfy its burden, "the plaintiff must adduce facts which 'establish with reasonable particularity that jurisdiction over [the defendant] exists." *Nespresso USA, Inc. v. Ethical Coffee Co. SA*, 263 F. Supp. 3d 498, 502 (D. Del. 2017).

### A.   Delaware's Long Arm Statute Does Not Authorize An Exercise Of Jurisdiction Over Ms. Vo, And, Therefore Any Exercise of Jurisdiction Violates Due Process

In determining whether to exercise personal jurisdiction over a defendant, the Court must engage in a two-step analysis: First, the court must examine whether the Delaware long-arm statute, 10 *Del. C.* § 3104, authorizes the exercise of jurisdiction over the defendant. *Max Daetwyler Corp. v. Meyer,* 762 F.2d 290, 293 (3d Cir. 1985); *Jeffreys v. Exten,* 784 F. Supp. 146, 150 (D. Del. 1992); Fed. R. Civ. P. 4(e). If the long-arm statute authorizes exercising jurisdiction, then the court must decide whether exercising jurisdiction comports with the requirements of the Due Process Clause. *Jeffreys*, 784 F. Supp. at 150.

Specifically, 10 *Del. C.* § 3104(c) identifies six scenarios in which Delaware Courts may exercise personal jurisdiction over a nonresident defendant. Those are that the nonresident:

> (1) Transacts any business or performs any character of work or service in the State;
>
> (2) Contracts to supply services or things in this State;
>
> (3) Causes tortious injury in the State by an act or omission in this State;

(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State;

(5) Has an interest in, uses or possesses real property in the State; or

(6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation or agreement located, executed or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

The Amended Complaint alleges, "Defendants used interstate commerce to advance their fraudulent scheme." Am. Compl., ¶ 20. Importantly, this allegation, and the Amended Complaint as a whole, fails to allege any acts by Ms. Vo specifically. Indeed, the Amended Complaint barely mentions Ms. Vo at all. *See Id.* ¶¶ 31, 54-56. Therefore, the Amended Complaint fails to allege any of the six scenarios as to Ms. Vo.

Here, the Amended Complaint does not specify whether Ms. Vo has done or performed any "services" or transact any business ***in the State of Delaware***. In fact, Ms. Vo's Employment Contract makes clear that her primary place of employment will be at a specified location in Pennsylvania with the following address: 1625 Washington Ave., Philadelphia, PA 19146. Vo Decl., ¶ 3, Ex. A. Correspondingly, Ms. Vo's place of residence has always been Pennsylvania throughout the relevant period. Vo Decl., ¶ 2. Plaintiff has not pled such specific and necessary facts that may satisfy any of the six scenarios set forth in 10 *Del. C.* § 3104(c) because they simply cannot allege such facts without resorting to deceit or factual fabrication. Accordingly, there is no need to go to the second step of the jurisdictional analysis as the Court cannot exercise personal jurisdiction against Ms. Vo as such an exercise in violation of the Delaware long-arm statute would violate the requirements of due process. *SC Botanicals, LLC v. Intragenix Holdings, LLC*, No. 20-1698-JLH, 2021 WL 2156503, at *5 (D. Del. May 27, 2021) ("Having found no statutory basis for

11

personal jurisdiction, I do not need to consider whether the exercise of jurisdiction comports with due process.").

## III.    THE AMENDED COMPLAINT FAILS TO SATISFY FEDERAL RULE OF CIVIL PROCEDURE 8(A)

The Amended Complaint improperly "group pleads" all of the defendants together—accusing them all of the same general negligent conduct—and therefore fails to put Ms. Vo on notice of the claims against her, as required by Fed. R. Civ. P. Rule 8(a). Plaintiffs' Amended Complaint references the Defendants in three ways: (1) "Company Defendants" (*Id.* ¶¶ 26-29), (2) "Individual Defendants" (*Id.* ¶¶ 30-38), and (3) "Defendants" (*Id.*; *see generally* Am. Compl.).

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." A motion to dismiss under Fed. R. Civ. P. 12(b)(6) may be granted if a court concludes that the plaintiff has failed to set forth fair notice of what the claim is and the grounds upon which it rests that make such a claim plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

Although a complaint does not require detailed factual allegations, it must contain enough well-pleaded facts to show that the claim is facially plausible. This "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The plaintiff must plead enough facts to "raise a reasonable expectation that discovery will reveal evidence of [the necessary element,]" *Twombly*, 550 U.S. at 556. Although all well-pleaded factual allegations must be accepted as true, the court may disregard any legal conclusions couched as factual allegations. *Id.; Iqbal*, 556 U.S. at 678; *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). If the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (citation omitted).

Plaintiffs' Amended Complaint fails to separate out the liability for each Defendant. Instead, it lumps Defendants together as a group (Company Defendants, Individual Defendants, and Defendants are grouped together at various locations in the Amended Complaint) and asserts general common factual allegations against all of them. There are 5 Counts, and the elements related to these Counts vary widely, from securities law violation claims to common-law unjust enrichment. Rather than specify which Defendants were responsible for which conduct, the Amended Complaint merely states that all Defendants are liable in the enumerated ways. Without any additional guidance as to the Defendants themselves and what functions they performed, it is impossible to untangle Plaintiffs' specific theory of liability against each individual Defendant.

Further, the mere fact that the Amended Complaint recites the type of liability inducing conduct at issue does not place the parties sufficiently on notice of the claims against them. Although the misconduct is alleged with some specificity, Rule 8 is not satisfied because the allegations do not inform each Defendant of the particular claims against it. Moreover, lumping all Defendants together for different misconduct fails to demonstrate each defendant's individual liability. Without pleading how, if at all, Ms. Vo was involved with the alleged conduct at issue, the Amended Complaint lacks sufficient facts from which to reasonably infer that Ms. Vo is actually responsible for any the alleged conduct at issue. See *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 555) ("We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement [under Rule 8(a)(2)] that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests.").

## IV.  COUNT 1: PLAINTIFFS FAIL TO STATE A CLAIM FOR UNREGISTERED OFFER AND SALE OF SECURITIES IN VIOLATION OF §§5 AND 12(A)(1) OF THE SECURITIES ACT

Section 5 of the Securities Act requires all issuers to register non-exempt securities with the Securities and Exchange Commission (SEC).  15 U.S.C.§ 77e. Under Section 12 of the

Securities Act of 1933, any person who "offers or sells" a security in violation of securities laws must be liable "to the person purchasing such security from him[.]" 15 U.S.C. § 77l. "The 'purchase from' requirement of Section 12 focuses on the defendant's relationship with the plaintiff-purchaser." *Pinter v. Dahl*, 486 U.S. 622, 651 (1987). An issuer is not liable "solely on the basis of its involvement in preparing the prospectus." *In re Craftmatic Sec. Litig.*, 890 F.2d 628, 636 (3d Cir. 1989). "The purchaser must demonstrate direct and active participation in the solicitation of the immediate sale to hold the issuer liable as a §12(2) seller." *Id.*; *See also, Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 536-37 (9th Cir. 1989) (mere performance of professional services without active solicitation of the purchase does not give rise to §12(2) liability).

Here, a mere conclusory statement that Ms. Vo allegedly "directed and/or authorized, directly or indirectly, the sale and solicitation of Mining Contract investments to the public" is insufficient to support a claim for Count 1. Am. Compl. ¶ 31; *Oakwood Labs.*, 999 F.3d at 904. Plaintiffs must provide actual facts to demonstrate how Ms. Vo qualifies as a §12(2) seller, let alone a seller of VBit's products. For example, there must be facts that describe what Ms. Vo did to allegedly "direct" the sale and/or solicitation of VBit's products as well as how Ms. Vo had any form of authority to make any decision in relation to the alleged sale and/or solicitation. Yet, no such facts exist in the Amended Complaint. Instead, Plaintiffs irresponsibly attempts to fabricate a nexus between Ms. Vo's previous marital relationship with Defendant Danh Vo and Ms. Vo's role as an administrative employee at VBit to forcefully create a legal liability. The simple truth about Ms. Vo is indeed acknowledged by Plaintiffs in that her role at VBit Tech was limited to that of an administrative employee who served as one of the low-level customer support staff members. Am. Compl. ¶ 31. Plaintiffs somehow "hope" that a number of exaggerations lumped

14

together in the Amended Complaint would be just enough to draw a minimal inference of liability against Ms. Vo in the pleadings stage. A fabrication of facts, however, cannot meet even the minimum pleading standard. There simply cannot be any facts that may somehow describe Ms. Vo as an issuer or a seller of VBit's products because no such facts exist. Thus, Count 1 should be dismissed with prejudice as against Ms. Vo.

## V.    COUNTS 2 AND 4: PLAINTIFFS FAIL TO STATE A CLAIM FOR VIOLATION OF §§15 AND 20(A) OF THE SECURITIES ACT

To state a claim for control person liability under Sections 15 and 20(a) of the Securities Act, a plaintiff must allege the following: (1) a primary violation of the federal securities laws by a controlled person or entity; (2) control of the primary violator by the defendant; and (3) that the controlling person was in some meaningful way a culpable participant in the primary violation. *In re Reliance Sec. Litig.,* 91 F. Supp.2d 706, 731 (D. Del. 2000), *citing, Boguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d Cir. 1998). To establish that a defendant is a control person, a plaintiff must demonstrate "the defendant had actual power or influence over the allegedly controlled person." *Kersh v. Gen. Council of Assemblies of God*, 804 F.2d 546, 548 (9th Cir. 1986). A person's status alone is ordinarily insufficient to establish control person liability. *Wool v. Tandem Computs. Inc.,* 818 F.2d 1433, 1441 (9th Cir. 1987); *see also, Wanetick v. Mel's of Modesto, Inc.*, 811 F. Supp. 1402, 1407 (N.D. Cal. 1992) ("[m]ere titles are not adequate indicators of control authority."). "If no controlled person is liable, there can be no controlling person liability." *Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 279 (3d Cir. 1992).

As a threshold issue, Ms. Vo contends that Plaintiffs have failed to provide sufficient facts to even suggest that Ms. Vo engaged in any sales and/or solicitation of any of VBit Tech's products. Therefore, even if Ms. Vo is somehow deemed as a "controlled person" under Section

15 of the Securities Act, Plaintiffs have failed to present any facts that show that Ms. Vo personally violated any securities laws.

Additionally, Plaintiffs have failed to allege any facts that show that Ms. Vo controlled or even had the ability to control any Defendants or individuals at any time.  Plaintiffs' forced correlation between Ms. Vo's prior marital status with Defendant Danh Vo fails to create a reasonable inference of Ms. Vo's alleged influence or control over VBit Tech or any of the allegedly related corporate Defendants.  As acknowledged by Plaintiffs, Ms. Vo was an administrative employee responsible for responding to customer support related questions at VBit Tech.  Am. Compl. ¶ 31.  Plaintiffs fail to provide any facts that show how an administrative employee like Ms. Vo may have any authority, influence, or control over any aspect of VBit Tech or any allegedly related corporate Defendants' business operations.  In fact, Ms. Vo's administrative duties detailed within her employment contract clearly contradict or defy Plaintiffs' attempted presumption that she had control over any individual or corporate Defendants. Vo. Decl. ¶ 5; Ex. A.  Thus, Counts 2 and 4 should fail as pled against Ms. Vo.

## VI.    COUNT 3: PLAINTIFFS FAIL TO STATE A CLAIM FOR VIOLATION OF §10(b) OF THE EXCHANGE ACT AND RULE 10b-5

To establish a claim under Section 10(b), the following must be pled and proven: "(1) a material misrepresentation (or omission); (2) scienter, i.e., a wrongful state of mind; (3) a connection with the purchase or sale of a security; (4) reliance, often referred to in cases involving public securities markets (fraud-on-the-market cases) as 'transaction causation;' (5) economic loss; and (6) 'loss causation,' i.e., a causal connection between the material misrepresentation and the loss."  *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 275 (3d Cir. 2006), *citing*, *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005) (emphasis omitted).  Also, Private Securities Litigation Reform Act (PSLRA) makes it abundantly clear that a Section 10(b) claim

must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1)(B). Likewise, the PSLRA requires plaintiffs to plead the required state of mind with particularity. *GSC Partners CDO Fund v. Washington*, 368 F.3d 228, 237 (3d Cir. 2004). In addition to the PSLRA pleading requirements, plaintiffs alleging fraud under the Securities Exchange Act must also comply with the heightened pleading standard of Rule 9(b). *Id*. at 236. "Rule 9(b) requires, at a minimum, that plaintiffs support their allegations of securities fraud with all of the essential factual background that would accompany 'the first paragraph of any newspaper story'—that is, the 'who, what, when, where and how' of the events at issue." *In re Rockefeller Center Prop. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002) (citation omitted).

Here, Plaintiffs fail to specify which Defendant committed which alleged conduct. Moreover, Plaintiffs fail to specify Ms. Vo's alleged wrongful conduct as well as fail to provide the necessary details to explain how Ms. Vo had any scienter or a wrongful state of mind to violate Section 10(b). Although the pleading standard to claim a Section 10(b) violation is strict and heightened per PSLRA and Rule 9(b), Plaintiffs simply rely on an improper group pleading and do not provide the required details to separate which allegation applies to which specific Defendant. Thus, Count 3 should not be able to survive a motion to dismiss.

## VII.    COUNT 5: PLAINTIFFS FAIL TO STATE A CLAIM FOR UNJUST ENRICHMENT/RESTITUTION

Under Delaware law, a plaintiff must plead and later prove the following to support a claim for unjust enrichment: "(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy

provided by law." *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010). Here, Plaintiffs' claim for unjust enrichment fails because the underlying claims for securities law violations against Ms. Vo are devoid of the necessary facts to support Plaintiffs' claims. Further, an alleged enrichment cannot exist where no enrichment is pled and none exists as against Ms. Vo specifically. Likewise, Plaintiffs' alleged loss in their investment efforts cannot be pled as caused by Ms. Vo, an administrative employee, especially when investments such as cryptocurrency are derived by the crypto market that is not within any one of the named Defendants' control.

## **CONCLUSION**

For the foregoing reasons, Ms. Vo respectfully requests that the Court dismiss Plaintiffs' Amended Complaint with prejudice.

/s/ Travis S. Hunter
Travis S. Hunter (#5350)
Jessica E. Blau (#7163)
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
(302) 651-7700
hunter@rlf.com
blau@rlf.com

*Attorneys for Defendant Phuong D Vo a/k/a Katie Vo*

Dated: August 26, 2024

18