**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| PARKER PELHAM, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>VBIT TECHNOLOGIES CORP., VBIT MINING LLC, VBIT DC CORP., ADVANCED MINING GROUP, DANH CONG VO A/K/A DON VO, PHUONG D VO A/K/A KATIE VO, SEAN TU, JIN GAO, LILLIAN ZHOU, AND JOHN DOE INDIVIDUALS 1-10, AND DOE COMPANIES 1-10,<br><br>Defendants. | C.A. No.: 23-cv-162-JLH-SRF<br><br><u>CLASS ACTION</u> |

**OPPOSITION TO JIN GAO'S MOTION TO DISMISS AND**
**CROSS MOTION TO AUTHORIZE ADDITIONAL TIME TO SERVE JIN GAO**

Dated: September 30, 2024

**FARNAN LLP**

Brian E. Farnan, Esq. (Bar No. 4089)
Michael J. Farnan, Esq. (Bar No. 5165)
919 North Market St., 12th Floor
Wilmington, DE 19801
Telephone: (302) 777-0300
Fax: (302) 777-0301
Email: bfarnan@farnanlaw.com
Email: mfarnan@farnanlaw.com

*Liaison Counsel for*
*Plaintiffs and the Class*

**THE ROSEN LAW FIRM, P.A.**

Phillip Kim, Esq.
Ha Sung (Scott) Kim, Esq. (*pro hac vice*)
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
        skim@rosenlegal.com

*Lead Counsel for*
*Plaintiffs and the Class*

## TABLE OF CONTENTS

I.    NATURE AND STAGE OF PROCEEDINGS ................................................................ 1

II.   STATEMENT OF FACTS .......................................................................................... 3

III.  SUMMARY OF ARGUMENTS .................................................................................. 4

IV.   THE MOTION TO DISMISS SHOULD BE DENIED .................................................. 5

  A.    Mr. Gao Was A Director, Officer, or Managing Agent of VBit Tech ........................ 5

  B.    Mr. Gao Was Timely Served Pursuant to Fed.R.Civ.P. 4(m) .................................... 6

    1.    Service at Mr. Gao's Home Was Effective ............................................................ 6

    2.    Ms. McKellar Promptly Served Mr. Gao Upon Lead Plaintiff Appointment ......... 7

  C.    Mr. Gao Had Actual Notice of the Action ............................................................... 8

  D.    This Court Has Personal Jurisdiction Over Mr. Gao ............................................... 9

    1.    Federal Statutes Allow for Nationwide Service ..................................................... 9

    2.    Alternatively, Mr. Gao is Subject to Personal Jurisdiction of This Court ............. 10

  E.    Alternatively, Plaintiffs Make a Cross Motion to Authorize Additional Time to
        Serve Mr. Gao via His Attorneys .......................................................................... 13

    1.    Good Cause Exists to Grant Additional Time to Serve .......................................... 14

    2.    Even If Good Cause Doesn't Exist, the Factors Favor Granting Plaintiffs
          Additional Time to Serve ................................................................................... 15

V.    CONCLUSION ....................................................................................................... 16

## **TABLE OF AUTHORITIES**

**Page(s)**

### **Cases**

*Aladdin Knowledge Sys. Ltd. v. Feitian Techs. Co.*,
  2006 WL 8432749 (D. Del. Feb. 24, 2006) ............................................................ 10

*BAM Int'l, LLC v. MSBA Grp. Inc.*,
  2021 WL 5905878 (Del. Ch. Dec. 14, 2021) .......................................................... 10

*Boley v. Kaymark*,
  123 F.3d 756 (3d Cir. 1997) .................................................................................. 14

*Bos. Sci. Corp. v. Micro-Tech Endoscopy USA Inc.*,
  2020 WL 229993 (D. Del. Jan. 15, 2020) ................................................................ 6

*Chiang v. U.S. Small Bus. Admin.*,
  331 F. App'x 113 (3d Cir. 2009) ............................................................................ 14

*Dan Dee International, LLC v. Global New Ventures Group LC*,
  2024 WL 3043430 (D. Del. June 18, 2024) ............................................................ 11

*Deloitte Consulting LLP v. Sajitec Sols. LLC*,
  692 F. Supp. 3d 421 (D. Del. 2023) ...................................................................... 11

*Dettmering et al. v. VBit Technologies Corp. et al.*,
  1:22-cv-01482-JLH-SRF ....................................................................................... 9

*FS Photo, Inc. v. PictureVision, Inc.*,
  48 F. Supp. 2d 442 (D. Del. 1999) .................................................................... 9, 10

*Gambone v. Lite-Rock Drywall Corp.*,
  124 F. App'x 78 (3d Cir. 2005) ........................................................................... 7, 9

*Kabbaj v. Simpson*,
  547 F. App'x 84 (3d Cir. 2013) ............................................................................. 11

*Love v. New Castle County*,
  2024 WL 2880424 (D. Del. June 7, 2024) ......................................................... 14, 15

*Newspan, Inc. v. Hearthstone Funding Corp.*,
  1994 WL 198721 (Del. Ch. May 10, 1994) ....................................................... 10, 11

*PT China LLC v. PT Korea LLC*,
  2010 WL 761145 (Del. Ch. Mar. 31, 2011) ............................................................ 12

*Rockwell Automation, Inc. v. EU Automation, Inc.*,
  2022 WL 1978726 (D. Del. June 6, 2022) ............................................................ 12

*Sierra v. Trafigura Trading LLC*,
  2024 WL 3823018 (D. Del. Aug. 14, 2024) ...................................................... 5, 6, 9

*Snowstorm Acquisition Corp. v. Tecumseh Prod. Co.*,
  739 F. Supp. 2d 686 (D. Del. 2010) ....................................................................... 9

*Swiderski v. Frabizzio*,
  2023 WL 112088 (D. Del. Jan. 5, 2023) ................................................................. 7

*Tigo Energy Inc. v. SMA Solar Technology America LLS*,
  2023 WL 6990896 (D. Del. Oct. 23, 2023) ............................................................. 6

*Toys "R" Us, Inc. v. Step Two, S.A.*,
  318 F.3d 446 (3d Cir. 2003) ................................................................................. 11

*Truinject Corp. v. Nestle Skin Health, S.A.*,
  2019 WL 6828984 (D. Del. Dec. 13, 2019) .......................................................... 10

*Wolfe v. Intermeccanica International, Inc.*,
  2024 WL 1300198 (D. Del. Mar. 27, 2024) .......................................................... 12

**Statutes**

10 Del. C. § 3104 .......................................................................................................... 11

10 Del. C. § 3114 ..................................................................................................... 7, 14

15 U.S.C. § 78aa .............................................................................................................. 9

**Rules**

Fed.R.Civ.P. 4 ...................................................................................................... passim

Fed. R. Civ. P. 12(b) ...................................................................................................... 1

**Regulations**

231 Pa. Code Rule 430 (a) ........................................................................................... 13

Lead Plaintiff Alisha McKellar ("Lead Plaintiff" or "Ms. McKellar") and named plaintiffs Jin Hyuk Ho ("Mr. Ho"), Terence Brown ("Mr. Brown"), David Veney ("Mr. Veney"), and Jake Washburn ("Mr. Washburn" and, collectively with Ms. McKellar, Mr. Ho, Mr. Brown, and Mr. Veney, "Plaintiffs") respectfully submit this memorandum of law in opposition (the "Opposition") to Defendant Jin Gao's Motion to Dismiss (the "Gao MTD") (D.I. 44)[1].

## I.      NATURE AND STAGE OF PROCEEDINGS

This matter arises out of Defendants' violations of §§5, 12(a)(1), and 15 of the Securities Act of 1933 ("Securities Act") and §§10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") in connection with the sale of unregistered securities. The amended complaint (the "Complaint") (D.I. 34) alleges that defendants VBit Technologies Corp. ("VBit Tech"), Vbit Mining LLC ("VBit Mining"), VBit DC Corp. ("VBit DC"), Advanced Mining Group ("Advanced Mining"), Danh Cong Vo a/k/a Don Vo ("Mr. Vo"), Phuong D Vo a/k/a Katie Vo ("Ms. Vo"), Sean Tu ("Mr. Tu"), Jin Gao "Mr. Gao"), and Lillian Zhou ("Ms. Zhou") sold unregistered securities in the form of investment contracts that allegedly allowed investors to own and operate their own Bitcoin mining rig. In truth, investors did not actually receive individualized mining rigs, but were instead engaged in cloud mining. The Complaint further alleges that customer funds were used to perpetuate a Ponzi scheme rather than purchasing and operating mining rigs—and when the scheme could not be perpetuated further, Defendants shut off clients' access to their Bitcoin wallet and fabricated a "sale" of the Company to Advanced Mining.

---

[1] The Gao MTD moves for dismissal pursuant to Fed.R.Civ.P. 4(m), 12(b)(2), and 12(b)(4). However, Mr. Gao does not raise any defenses pursuant to Rule 12(b)(4). Instead, his arguments concerning service of process are pursuant to Rule 12(b)(5).

An initial complaint was filed on February 13, 2023 by plaintiff Parker Pelham ("Mr. Pelham") (D.I. 1). On March 17, 2023, Mr. Pelham filed a return of service attesting that Mr. Gao had been served with a summons and complaint (D.I. 6).

On April 17, 2023, Ms. McKellar filed a lead plaintiff motion seeking appointment as lead plaintiff for the putative class. (D.I. 7). One other class member filed a competing lead plaintiff motion (D.I. 10), but did not oppose Ms. McKellar, recognizing Ms. McKellar had the larger financial interest (D.I. 13). On July 5, 2023, this Court granted Ms. McKellar's motion and appointed her lead plaintiff for the putative class and approved her selection for The Rosen Law Firm, P.A. as lead counsel. (D.I. 17).

Upon appointment as lead plaintiff, Ms. McKellar promptly took action to serve all defendants. By July 27, 2023, Ms. McKellar had served most of the defendants, including Mr. Gao. By October 23, 2023, the final defendant – Advanced Mining – had been served, and Plaintiffs filed the proofs of service with the Court. (D.I. 18).

Ms. Vo filed a motion to dismiss for lack of insufficiency of service on November 15, 2023 (D.I. 19). Plaintiffs filed an opposition to Ms. Vo's first motion to dismiss and a cross motion to allow alternative service on November 29, 2023 (D.I. 23). Ms. Vo filed a reply brief to her first motion to dismiss on December 6, 2023 (D.I. 25). Plaintiffs filed a reply to their cross motion to allow alternative service on December 13, 2023 (D.I. 27).

On July 11, 2024, after months of back-and-forth with counsel for Ms. Vo and Mr. Gao, Plaintiffs filed an unopposed motion to amend the initial complaint. On July 26, 2024, this Court granted Plaintiffs' motion and, pursuant to the report and recommendation (D.I. 33), the Plaintiffs filed the Complaint on July 29, 2024 (D.I. 34).

On August 12, 2024, Ms. Vo filed a stipulation to extend her time to respond to the Complaint (D.I. 39). On August 26, 2024, Ms. Vo filed her second motion to dismiss (D.I. 41). On August 29, 2024, Mr. Gao filed the Gao MTD (D.I. 44). On September 17, 2024, Plaintiffs filed a stipulation to extend their time to respond to the Gao MTD (D.I. 47). On September 19, 2024, Plaintiffs filed a stipulation to extend their time to respond to Ms. Vo's second motion to dismiss (D.I. 48).

## II.    STATEMENT OF FACTS

VBit Tech purportedly sold products and services for mining Bitcoin through its Mining Contracts[2], ¶¶1, 7. These Mining Contracts were unregistered securities, ¶¶94, 103, 114-130. Defendants promised their clients – victims, in truth – that they would each receive an individualized mining rig, ¶¶7-8, 13, 45-48. These were purportedly discrete machines, rather than a pooling of computing power dubbed "cloud mining". Indeed, VBit Tech's, and now Advanced Mining's, website specifically stated that their services did not rely on "cloud mining" and said each contract was for an individual machine, ¶¶7-8, 13, 45-48, 63. In reality, VBit Tech was engaged in a Ponzi scheme, wherein VBit Tech purportedly paid out the promised Bitcoin only as new Class members and victims bought in, ¶¶1, 100. VBit Tech may have engaged in some Bitcoin mining, but Defendants primarily used victims' money to engage in risky and speculative cryptocurrency trading, ¶100. In late January 2022, VBit Tech was allegedly acquired by an "Asian-based company primarily focused on bitcoin mining" called Advanced Mining, ¶10, 75-76. Advanced Mining is not registered to do business in any jurisdiction in the U.S, ¶82. Plaintiffs allege that Advanced Mining, and its CEO Lillian Zhou, do not exist, and that the sale of VBit

---

[2] Capitalized terms not defined herein will have the same meaning as used in the Complaint. D.I. 34. All references to ¶__ refer to the corresponding paragraph in the Complaint.

Tech to Advanced Mining was a sham transaction, and that Mr. Vo assumed the identity of Lillian Zhou to perpetuate the fraud, ¶¶10, 88-89.

Mr. Gao is a co-founder of VBit Tech and was previously its Vice President, ¶33. After Advanced Mining 'acquired' VBit Tech, Mr. Gao was named Vice Chairman of Advanced Mining. *Id.* Mr. Gao played an active role in promoting VBit Tech, including calling himself "face of the company" in a YouTube video posted on October 3, 2020 (available at https://www.youtube.com/watch?v=biF65sUW4Ug) (last visited September 23, 2024). *Id.* Mr. Gao directly or indirectly owned the building at 1625 Washington Avenue that VBit Tech and Advanced Mining purportedly used as their headquarters. *Id.* Mr. Gao is also a 17% shareholder and co-founder of VBit DC, a subsidiary of VBit Tech that raised money to operate Bitcoin mining facilities, ¶53. VBit DC owns a building and land in Columbia Falls, Montana that VBit Tech used for Bitcoin mining. *Id.* Mr. Gao, alongside Mr. Vo, presented top performers with new BMW sports cars and shared videos of the presentation, ¶74. Additionally, Mr. Gao posted videos online as a means of recruiting additional victims to VBit Tech, ¶73.

## III.    SUMMARY OF ARGUMENTS

Mr. Gao was an officer, director, or managing agent of VBit Tech. Mr. Gao was timely served pursuant to Fed.R.Civ.P. 4(m). Mr. Gao's 12(b)(2) personal jurisdiction argument fails because Plaintiffs have alleged Securities Act and Exchange Act claims in the Complaint, which allow for nationwide service. Additionally, Mr. Gao was properly served at his home when the process server left the process papers at the door because, as Mr. Gao admits, he was dodging service. Affidavit of Jin Gao, D.I. 44-1, ¶15 ("Gao Affidavit"). But if the Court disagrees with Plaintiffs and finds that service was not effective, then Plaintiffs request that the Court authorize Plaintiffs to serve Mr. Gao again.

When considering a 12(b)(2) motion to dismiss, the court "must construe all disputed facts in the plaintiff's favor." *Sierra v. Trafigura Trading LLC*, 2024 WL 3823018, at *3 (D. Del. Aug. 14, 2024).

## IV.    THE MOTION TO DISMISS SHOULD BE DENIED

### A.    Mr. Gao Was A Director, Officer, or Managing Agent of VBit Tech

The Complaint contains well-pled factual allegations sufficient to establish that Mr. Gao was a director, officer, or managing agent of VBit Tech. Mr. Gao owned a 17% share in VBit DC, which raised money to operate mining facilities and owned a mining facility in Montana, ¶53. Mr. Gao, alongside Mr. Vo, presented top performers with new BMW cars and shared videos of the presentation, ¶74. Mr. Gao held himself out as the "face of the company"[3] in a video posted to VBit Tech's official YouTube channel, ¶33. Mr. Gao was a co-founder and vice president of VBit Tech, *id.* Mr. Gao directed and authorized, directly or indirectly, the sale and solicitation of Mining Contracts to the public, including by hosting 'trainings' where he encouraged VBit Tech victims to bring in their family and friends, *id.* These facts show that Mr. Gao wasn't just an average salesperson, but that he played a leadership role in VBit Tech. He ran training sessions, acknowledged that, in his role, people mistook him for the CEO, and was familiar with the operational details of VBit Tech.

Mr. Gao provides only conclusory factual statements to contest the well-pled facts in the Complaint. Mr. Gao states that he was not a co-founder and was only a salesperson, with his title given because of his and his team's performance. Gao MTD, ¶¶17-19. When considering a 12(b)(2) motion to dismiss, "the Court may consider the pleadings, affidavits, declarations and

---

[3] The full quote from the video is, "You guys might think I run the company but [. . .] I always say I'm more the face of the company." Additional quotes by Mr. Gao from the video include: "This week [. . .] it's been great, guys. Our company's been doing really well."; "Also, when we're doing training, you guys are in the office all the time, being helpful."

exhibits, and must construe all disputed facts in the plaintiff's favor." *Sierra*, 2024 WL 3823018, at *3; *Tigo Energy Inc. v. SMA Solar Technology America LLS*, 2023 WL 6990896, at *3 (D. Del. Oct. 23, 2023) (" 'In reviewing a motion to dismiss for lack of personal jurisdiction, the Court may consider the pleadings, affidavits, declarations and exhibits;' however, the Court 'must construe all disputed facts in the plaintiff's favor.'") (quoting *Bos. Sci. Corp. v. Micro-Tech Endoscopy USA Inc.*, 2020 WL 229993, at *3 (D. Del. Jan. 15, 2020)). Here, when construing all disputed facts in the Plaintiffs' favor, the Court must find Mr. Gao was as an officer, director, or managing agent of VBit Tech.

**B.    Mr. Gao Was Timely Served Pursuant to Fed.R.Civ.P. 4(m)**

**1.    Service at Mr. Gao's Home Was Effective**

Plaintiffs disagree with Mr. Gao concerning the effectiveness of service at his home. As a preliminary matter, Plaintiffs were not involved in the initial service attempt at Mr. Gao's residence. Ms. McKellar and her counsel were not contemporaneously privy to any communications between Mr. Gao's counsel and counsel for plaintiff Parker Pelham.

First, the Ring camera footage is not the smoking gun Mr. Gao believes it to be. The submitted footage purportedly shows a process server leaving the summons and complaint at the door. However, around 15:00:47 – or around the 1:09 minute mark in the video – the process server holds up the papers and says "here" to someone off camera. When he holds the papers up, the papers become partially illuminated, presumably from a light source coming from or through a part of the door. The process server's affidavit states that Mr. Gao was personally served. The individual served is described as a 5' 6" Asian male, aged 50-55, and approximately 135 pounds. Mr. Gao does not contest these physical descriptions, nor does he explain how the process server could have known his physical description if he was not personally served. These conflicting facts must be construed in favor of Plaintiffs. *Sierra*, 2024 WL 3823018, at *3.

Second, Mr. Gao has admitted that he has been and will continue to evade service, if only inadvertently. "I usually do not answer the door when the doorbell rings unless I am expecting someone." Gao Affidavit, ¶15. If Mr. Gao usually does not answer the door when home, effecting service at his home becomes virtually impossible. "If the defendant attempts to evade service or refuses to accept delivery after being informed by the process server of the nature of the papers, it usually is sufficient for the process server simply to leave them in the defendant's physical proximity, as Rule 4 guards the objective of giving notice to the party to be served." *Gambone v. Lite-Rock Drywall Corp.*, 124 F. App'x 78, 79 (3d Cir. 2005) (cleaned up); *Swiderski v. Frabizzio*, 2023 WL 112088, at *2 (D. Del. Jan. 5, 2023) (same). And as discussed previously, in the footage provided by defendants, the process server can be seen and heard speaking with someone at, or through the door. This suggests that Mr. Gao spoke with the process server, if only momentarily. Therefore, leaving the papers at the door was sufficient.

### 2.    Ms. McKellar Promptly Served Mr. Gao Upon Lead Plaintiff Appointment

As discussed previously, Ms. McKellar was appointed lead plaintiff on July 5, 2023 (D.I. 17). Upon appointment as lead plaintiff, Ms. McKellar worked diligently to serve all defendants. Ms. McKellar relied upon the affidavit of service filed by Parker Pelham (D.I. 6). But, seeing that Mr. Gao still had not appeared in this case but had appeared in the related RICO case *Dettmering et al. v. VBit Technologies Corp. et al.*, 1:22-cv-01482-JLH-SRF ("*Dettmering* Action"), Ms. McKellar served Mr. Gao again out of an abundance of caution.

Seeing that Mr. Gao had previously been served at his residence but hadn't made an appearance, Ms. McKellar served Mr. Gao through VBit Tech's registered agent, Legalinc Corporate Services, Inc. Pursuant to Fed.R.Civ.P. 4(e)(1), an individual defendant in the United States may be properly served by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located[.]" 10 Del. C. § 3114

provides that nonresidents of Delaware who served as officers of a Delaware corporation are "deemed thereby to have consented to the appointment of the registered agent of such corporation (or, if there is none, the Secretary of State) as an agent upon whom service of process may be made[.]" Therefore, Ms. McKellar promptly and effectively served Mr. Gao, who was an officer, director, or managing agent of VBit Tech, through the company's registered agent.

Contrary to the Gao MTD, Plaintiffs did not know about the alleged defective service on or about April 5, 2023. Gao MTD, ¶¶7-8. Indeed, the sole email Mr. Gao includes in the Gao MTD shows that his counsel reached out to attorneys from Chamberlain Law, who do not represent the Plaintiffs in this action, *id.* at ¶7. Ms. McKellar did not become a party to this action until her lead plaintiff appointment in July of 2023, months after the alleged defective service. Therefore, Mr. Gao is mistaken to say that his "counsel informed Plaintiffs' counsel of this deficiency" – they did not, *id.* Mr. Gao is also mistaken to say that his counsel followed up with Plaintiffs' counsel, that Plaintiffs' counsel never answered, and that Plaintiffs made no efforts to correct the deficiency. *Id.*, at ¶¶7-8.

### C. Mr. Gao Had Actual Notice of the Action

By no later than April 5, 2023, Mr. Gao had actual notice of this action. On that date, attorneys for Mr. Gao emailed attorneys for the original filing plaintiff, Mr. Pelham, concerning the alleged deficient service. Gao MTD, ¶7. By Mr. Gao's own admission, he had actual notice of this action by April 5, 2023.

### D.    This Court Has Personal Jurisdiction Over Mr. Gao

#### 1.    Federal Statutes Allow for Nationwide Service

Plaintiffs' claims in this case arise, in part, due to Defendants' violations of the Securities Act and Exchange Act. Both the Securities Act and Exchange Act allow for nationwide service.[4] *Gambone*, 124 Fed.Appx. 80 (recognizing that the Securities Act provides for nationwide service of process); *Snowstorm Acquisition Corp. v. Tecumseh Products Co.*, 739 F.Supp.2d 686, 699 (D. Del. 2010) ("Jurisdiction over alleged violations of the [Exchange] Act is governed by § 27 of the Act. See 15 U.S.C. § 78aa. [. . .] As stated above, § 78aa provides for nationwide service of process. The Third Circuit has held that a "national contacts analysis" is appropriate "when appraising personal jurisdiction in a case arising under a federal statute that contains a nationwide service of process provision.""); *FS Photo, Inc. v. PictureVision, Inc.*, 48 F. Supp. 2d 442, 445 (D. Del. 1999) ("The due process requirement of *International Shoe v. Washington*, that a defendant have "minimum contacts" with a particular district or state for purposes of personal jurisdiction, is not a limitation imposed on the federal courts under Section 27 in a federal question case. Due process concerns under the Fifth Amendment are satisfied if a federal statute provides for nationwide service of process in federal court for federal question cases.") (cleaned up). In the *Dettmering* Action, Mr. Gao admitted that the Mining Contracts VBit Tech sold were unregistered securities. *Dettmering et al. v. VBit Technologies Corp. et al.*, 1:22-cv-01482-JLH-SRF, D.I. 146, at 5-10. This, combined with the factual allegations in the Complaint showing Mr. Gao's central role in VBit Tech, shows that Mr. Gao is subject to personal jurisdiction in this court.

Furthermore, if there has been no evidentiary hearing on the motion to dismiss for lack of personal jurisdiction, plaintiff need only make a *prima facie* showing of jurisdictional facts. *Sierra*,

---

[4] Delaware's long-arm statute is not invoked in federal question actions. *Snowstorm Acquisition Corp. v. Tecumseh Prod. Co.*, 739 F. Supp. 2d 686, 700 (D. Del. 2010).

2024 WL 3823018, at *3 ("where no evidentiary hearing has been held, the plaintiff must only make a *prima facie* showing that personal jurisdiction exists."). Plaintiffs, by establishing that Mr. Gao was an officer or director in the Complaint, have made a *prima facie* showing that he is subject to personal jurisdiction of this court.

Mr. Gao's reliance on *BAM Int'l, LLC v. MSBA Grp. Inc.*, 2021 WL 5905878, at *2 (Del. Ch. Dec. 14, 2021) is misplaced.[5] In *BAM*, the issue was a commercial contractual dispute. There was no federal statute providing for nationwide service, as there is here pursuant to the Exchange Act. Furthermore, the moving parties in *BAM* were not parties to the contract, and the court found that the "paucity" of the moving parties' contacts with Delaware failed to satisfy due process. There is no such due process concern under the Exchange Act. *FS Photo, Inc.*, 48 F.Supp.2d 445.

## 2.    Alternatively, Mr. Gao is Subject to Personal Jurisdiction of This Court

Out of an abundance of caution, Plaintiffs address the question of whether Delaware's long-arm statute grants jurisdiction. Even if the court should determine that Mr. Gao was not an officer or director of VBit, he is still subject to person jurisdiction of this court. VBit Tech solicited business from investors all across the country, including citizens of the state of Delaware. Indeed, when Plaintiffs notified potential class members of the action against Defendants, numerous clients from Delaware submitted PSLRA certifications attesting they were victims of Defendants.

Mr. Gao played an important role in furthering VBit Tech's securities fraud. Mr. Gao admits he and his team brought on so many new victims that Mr. Gao was awarded the title of

---

[5] The other cases Mr. Gao cites in Sec. III.B. are inapposite as none of them deal with the question of personal jurisdiction under the Exchange Act. *Truinject Corp. v. Nestle Skin Health, S.A.*, 2019 WL 6828984, at *7 (D. Del. Dec. 13, 2019) (plaintiff alleged breach of contract, fraud, patent infringement, trade secret misappropriation, and other related claims); *Aladdin Knowledge Sys. Ltd. v. Feitian Techs. Co.*, 2006 WL 8432749, at *3 (D. Del. Feb. 24, 2006) (suit for patent infringement); *Newspan, Inc. v. Hearthstone Funding Corp.*, 1994 WL 198721, at *4 (Del. Ch. May 10, 1994) (case involving contested ownership of certain bonds, seeking certain specific relief).

Vice President. Gao MTD, ¶18. Additionally, Mr. Gao hosted a training livestream, which was later uploaded to VBit Tech's official YouTube channel, in which he trained victims how to utilize VBit Tech's services and held himself out as the "face of the company" and stated he gets mistaken for VBit Tech's CEO, ¶33. He owned the Philadelphia office that VBit Tech (and later Advanced Mining) operated out of, *id.*, and he had a 17% ownership stake in VBit DC, which raised funds for and owned the mining facility in Montana used by VBit Tech, ¶53.

"The determination of personal jurisdiction thus mandates that the court follow a two-part test: [1] the defendants' alleged activities must fall into those enumerated in Delaware's long arm statute, 10 Del. C. § 3104 . . . and [2] the exercise of jurisdiction over the defendants must comport with traditional notions of fair play and substantial justice as required by the Due Process Clause of the Fourteenth Amendment." *Newspan, Inc.*, 1994 WL 198721, at *4 "The Delaware long-arm statute, 10 Del. C. § 3104(c), is to be broadly construed to confer jurisdiction to the maximum extent possible under the Due Process Clause." *Dan Dee International, LLC v. Global New Ventures Group LC*, 2024 WL 3043430, at *2 (D. Del. June 18, 2024) (citing *Kabbaj v. Simpson*, 547 F. App'x 84, 86 n.6 (3d Cir. 2013)).

10 Del. C. § 3104(c) states, in pertinent part: "[A] court may exercise personal jurisdiction over any nonresident, or a personal representative, who in person or through an agent: (1) Transacts *any business* or performs *any character of work or service* in the State; (2) *Contracts to supply services* or things in this State[.]" Additionally, "[m]any courts have held that the solicitation of business from residents of a particular state, even if that solicitation occurs over the internet or the telephone, is sufficient to support the exercise of jurisdiction." *Deloitte Consulting LLP v. Sagitec Sols. LLC*, 692 F. Supp. 3d 421, 429 (D. Del. 2023); *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 452 (3d Cir. 2003) (If a web site operator "knowingly conducts business with forum state

11

residents via the site, then the 'purposeful availment' requirement is satisfied."); *Rockwell Automation, Inc. v. EU Automation, Inc.*, 2022 WL 1978726, at *7 (D. Del. June 6, 2022), *report and recommendation adopted*, 2022 WL 3576231 (D. Del. Aug. 19, 2022) (holding that the court had jurisdiction over the defendants who "operated a website accessible in Delaware" and "received orders and payments from Delaware customers" via the website, even though the defendants had "no offices, telephone listings, employees, bank accounts, advertising, personal or real property in Delaware, or any ongoing contracts with any Delaware customers").

VBit Tech maintained a website which was accessible to anyone, including residents of Delaware, that marketed and sold Mining Contracts. Mr. Gao, directly or indirectly, aided in operating and maintaining the website by virtue of his key role for VBit Tech. Mr. Gao and his agents – in other words, his sales team – transacted business in Delaware not only by virtue of maintaining a website through which Delaware residents purchased Mining Contracts, but Mr. Gao took active steps to transmit communications into Delaware through videos posted to YouTube.

"The court must then determine whether the exercise of personal jurisdiction comports with due process by analyzing whether the plaintiff has demonstrated that the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum State so that it should reasonably anticipate being haled into court there." *Wolfe v. Intermeccanica International, Inc.*, 2024 WL 1300198, at *2 (D. Del. Mar. 27, 2024). And where someone accepts a management position in a Delaware corporation, he has "submitted himself to the jurisdiction of the Delaware courts in suits pertaining to his rights, duties, and obligations as a manager." *PT China LLC v. PT Korea LLC*, 2010 WL 761145, at *8 fn.44 (Del. Ch. Mar. 31, 2011). Mr. Gao played a key role for VBit Tech, to the point where he held himself out as the "face of the company" and was

mistaken for VBit Tech's CEO. He owned the Philadelphia building which VBit Tech operated out of. He had a 17% stake in VBit DC, which raised funds for and operated mining facilities. He led a successful team of salespeople, to the point where he was named Vice President. As such, the Court should find that Mr. Gao has submitted himself to this court's jurisdiction.

### E.    Alternatively, Plaintiffs Make a Cross Motion to Authorize Additional Time to Serve Mr. Gao via His Attorneys

If the Court disagrees with Plaintiffs and finds that Mr. Gao was not properly served, Plaintiffs respectfully request that the Court allow them time to properly serve Mr. Gao via his attorneys.

First, alternate service is permissible under Fed.R.Civ.P. Rule 4(e)(1). An individual in the United States may be served by "following state law for serving a summons [. . .] where service is made." Pennsylvania rules allow for service by order of court when service cannot be made under applicable rules. 231 Pa. Code Rule 430 (a) ("If service cannot be made under the applicable rule the plaintiff may move the court for a special order directing the method of service. The motion shall be accompanied by an affidavit stating the nature and extent of the investigation which has been made to determine the whereabouts of the defendant and the reasons why service cannot be made.") *See*, Exhibit A attached hereto, Affidavit of Brian Farnan. Therefore, it is permissible for the court to order service upon Mr. Gao via his attorneys. Because Mr. Gao has admitted that he has been and will continue to evade service, alternate service via his attorneys is warranted. Gao Affidavit, ¶15.

Second, as Mr. Gao correctly noted, the Court "must dismiss the action ***without prejudice*** against [Mr. Gao] or ***order that service be made within a specified time***." Fed.R.Civ.P. 4(m) (emphasis added). In cases where a plaintiff has failed to serve a defendant in time pursuant to Rule 4(m), the court conducts a two-step inquiry. "First, the court determines whether good cause

exists for a plaintiff's failure to effect timely service." *Love v. New Castle County*, 2024 WL 2880424, at *1 (D. Del. June 7, 2024) (citing *Boley v. Kaymark*, 123 F.3d 756, 758 (3d Cir. 1997)) (internal quotation marks removed). "If good cause exists, the court must extend the time for service." *Id.* "In determining whether good cause exists, the court's primary focus is on the plaintiff's reasons for not complying with the time limit in the first place." *Id.* (internal quotation marks removed). "Second, if good cause does not exist, then the court must consider whether to grant a discretionary extension of time. In exercising this discretion, the court may consider actual notice of the legal action; prejudice to the defendant; the statute of limitations on the underlying causes of action; the conduct of the defendant; and whether the plaintiff is represented by counsel, in addition to any other factor that may be relevant." *Id.* (citing *Chiang v. U.S. Small Bus. Admin.*, 331 F. App'x 113, 116 (3d Cir. 2009)) (cleaned up).

### 1. Good Cause Exists to Grant Additional Time to Serve

Here, good cause exists for Plaintiffs' alleged failure to serve Mr. Gao. Plaintiffs relied on the filed affidavit of service (D.I. 6). As previously discussed, Ms. McKellar was not a party to this action when the issues concerning Parker Pelham's alleged insufficient service were raised. Furthermore, Ms. McKellar served Mr. Gao via VBit Tech's registered agent, as the Complaint alleged facts showing that Mr. Gao was a director or officer of VBit Tech and Advanced Mining. Service upon officers and directors of a Delaware corporation is sufficient when served upon the registered agent. 10 Del. C. § 3114.

And as discussed previously, Mr. Gao's attempts to characterize Plaintiffs as dilatory are off the mark. It wasn't Plaintiffs' counsel that Mr. Gao's counsel emailed – it was Parker Pelham's counsel. Gao MTD, ¶7. Indeed, it was due to Plaintiffs' proactive approach that they learned that Mr. Gao alleged deficient service.  On or about June 6, 2024, as Plaintiffs were trying to amend the initial complaint, counsel for Plaintiffs reached out to Mr. Gao's counsel of record from the

*Dettmering* Action. It was only then that Plaintiffs learned of Mr. Gao's stance – that the first service attempt, by plaintiff Parker Pelham, was ineffective, and that Mr. Gao was allegedly not a director or officer of VBit Tech and therefore considered service via VBit Tech's registered agent ineffective. See, Exhibit B attached hereto, Emails between Counsel for Plaintiffs and Counsel for Mr. Gao.

As discussed above, good cause exists for the delay in timely serving Mr. Gao, and Plaintiffs respectfully request that they be given additional time to serve Mr. Gao via his attorneys.

## 2. Even If Good Cause Doesn't Exist, the Factors Favor Granting Plaintiffs Additional Time to Serve

If the Court finds that there was no good cause, then the analysis in the second step supports granting a discretionary extension of time. As previously discussed, courts consider "actual notice of the legal action; prejudice to the defendant; the statute of limitations on the underlying causes of action; the conduct of the defendant; and whether the plaintiff is represented by counsel, in addition to any other factor that may be relevant." *Love*, 2024 WL 2880424, at *1.

Here, per Mr. Gao's own admission, he was aware of this action by no later than April 5, 2023. Gao MTD, ¶ 7. This factor weighs in favor of Plaintiffs. Mr. Gao has made no showing that he has been disadvantaged by the supposed lack of service. This factor weighs in favor of Plaintiffs. While the statute of limitations has not yet run on the claims in the Complaint, it will likely pass by the time the motions to dismiss are fully briefed. Therefore, this factor weighs in favor of Plaintiffs. Mr. Gao was, at least in part, responsible for the deficiency in service. By his own admission, Mr. Gao usually does not usually answer his door for unexpected visitors – this would make it practically impossible to serve Mr. Gao at his home. Gao Affidavit, ¶15. Similarly, the alleged defect in serving Mr. Gao through Legalinc is based on Mr. Gao contesting facts from the Complaint alleging he was an officer or director of VBit Tech and Advanced Mining. This factor

is, at worst, neutral. Lastly, Plaintiffs are represented by counsel, which weighs against Plaintiffs. Given that the majority of the factors support Plaintiffs, Plaintiffs respectfully request that, even if the Court does not find good cause, that Plaintiffs be granted a discretionary extension of time to serve Mr. Gao.

Additionally, as Mr. Gao admitted in the Gao Affidavit, he does not usually answer the door if he is not expecting anyone. Gao Affidavit, ¶15. This would suggest Mr. Gao is, if inadvertently, evading service. If Mr. Gao does not open the door for unexpected visitors, there is no way for a process server to reach him at his domicile. Therefore, Plaintiffs request that the court authorize alternative service via Mr. Gao's counsel.

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully submit that the Court should deny Mr. Gao's Motion to Dismiss.

Dated: September 30, 2024          Respectfully submitted,

**FARNAN LLP**

/s/ Brian E. Farnan
Brian E. Farnan, Esq. (Bar No. 4089)
Michael J. Farnan, Esq. (Bar No. 5165)
919 North Market St., 12th Floor
Wilmington, DE 19801
Telephone: (302) 777-0300
Fax: (302) 777-0301
Email: bfarnan@farnanlaw.com
Email: mfarnan@farnanlaw.com

*Liaison Counsel for*
*Plaintiffs and the Class*

**THE ROSEN LAW FIRM, P.A.**

Phillip Kim, Esq.
Ha Sung (Scott) Kim (*pro hac vice*)
275 Madison Avenue, 40th Floor

16

New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
Email: skim@rosenlegal.com

*Lead Counsel for Plaintiff and the Class*