## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PARKER PELHAM, Individually and on Behalf of All Other Similarly Situated, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 23-162-JLH-SRF |
| VBIT TECHNOLOGIES CORP., VBIT MINING LLC, ADVANCED MINING GROUP, DANH CONG VO a/k/a DON VO, PHUONG D VO a/k/a KATIE VO, SEAN TU, JIN GAO, LILLIAN ZHAO, And JOHN DOE INDIVIDUALS 1–10, and DOE COMPANIES 1–10 | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

Presently before the court in this civil action for violations of the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act") are the following motions:[1] (1) a motion to dismiss for lack of personal jurisdiction and failure to state a claim under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), respectively, which was filed by defendant Phuong D. Vo a/k/a Katie Vo ("Vo") (D.I. 41); (2) a motion to dismiss for lack of personal jurisdiction and insufficient process under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(4), which was filed by defendant Jin Gao ("Gao") (D.I. 44); and (3) a motion to dismiss or quash for insufficient service of process under Federal Rules of Civil Procedure 12(b)(5), which was filed by defendant Sean Tu ("Tu"). (D.I. 66) In their answering brief, in opposition to Gao's motion to dismiss, Plaintiffs include an alternative cross-motion for an extension of time to serve Gao. (D.I. 51) For the following reasons, I recommend the court

---

[1] Briefs related to Vo's motion are found at D.I. 42, D.I. 53, and D.I. 58. Briefs related to Gao's motion are found at D.I. 44, D.I. 51, and D.I. 57. Briefs related to Tu's motion are found at D.I. 66, D.I. 67, and D.I. 68.

**DENY** the motions filed by Vo, Gao, and Tu.  I recommend the court **DENY** as moot Plaintiffs' alternative motion for an extension of time to serve Gao.

## I. BACKGROUND[2]

### A. Procedural History

On February 13, 2023, Parker Pelham filed the initial complaint in this putative class action against Defendants VBit Technologies Corp., VBit Mining LLC, Advanced Mining Group, (corporate defendants collectively, "VBit") and Danh Cong Vo a/k/a Don Vo, Vo, Tu, Gao, and Lillian Zhou (collectively, "Defendants") alleging violations of the Exchange Act, and the Securities Act.  (D.I. 1; D.I. 16; D.I. 17)  On July 5, 2023, Plaintiff Alisha McKellar ("McKellar") was appointed lead plaintiff.  (D.I. 16)

On November 15, 2023, Vo filed her first motion to dismiss the original complaint for lack of personal jurisdiction, insufficiency of process, and failure to state a claim.  (D.I. 19)  Contained within Plaintiffs' answering brief to that motion was a cross motion to allow alternative service, which was not separately briefed.  (*Id.*)

McKellar filed a motion for leave to amend the complaint on July 11, 2024, which was effectively unopposed and subsequently granted.  (D.I. 33)  The first amended complaint ("FAC") was docketed on July 29, 2024, adding Defendant VBit DC Corp.  (D.I. 34) Thus, Vo's pending motion to dismiss and the Plaintiffs' cross motion for alternative service were denied without prejudice to renew.  (*Id.*)

On August 26, 2024, a second round of motion practice began with the renewal of Vo's motion to dismiss.  (D.I. 41)  It was followed by Gao's motion to dismiss for lack of personal

---

[2] The facts here are incorporated from the first amended complaint ("FAC") (D.I. 34), which the court views in the light most favorable to the plaintiff on a motion to dismiss.  *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790–91 (3d Cir. 2016).

2

jurisdiction and insufficient process, filed on August 29, 2024. (D.I. 44)   In her opposition, McKellar included a cross-motion to allow alternative service against Gao, which was not separately briefed. (D.I. 51)

On November 7, 2024, defaults in appearance were entered against the following Defendants: Advanced Mining, VBit Technology Corp., VBit Mining, VBit DC, Tu, Don Vo, and Lillian Zhou. (D.I. 59; D.I. 60)  Thereafter, on November 22, 2024, *pro se* Defendant Tu filed a motion to dismiss for improper service which, in effect, seeks to also vacate the default in appearance entered against him on November 7, 2024, among other requests for relief. (D.I. 64; D.I. 66)  The remaining defaulted Defendants have not appeared in this case.

### B.  Factual Background

This action was brought on behalf of VBit investors who purchased unregistered securities in the form of investment contracts promising the sales, leasing, and servicing of specialized computer hardware to produce Bitcoins for customers (the "Mining Contracts"). (D.I. 34 at ¶ 6)  Under the Mining Contracts, Defendants were supposed to host physical Bitcoin mining equipment at various facilities and investors would earn the proceeds of those Bitcoin mining efforts, with profits being distributed directly to the investors' "virtual wallets." (*Id.* at ¶ 7)  Over time, Plaintiffs' virtual wallets, which were hosted in an online dashboard by Defendants, would show investment returns. (*Id.* at ¶ 8)

Beginning in June of 2022, investors began to realize they could no longer make withdrawals of Bitcoin from their virtual wallets. (*Id.*)  Plaintiffs allege that the balances displayed in their virtual wallets were illusory and arbitrarily determined by the Defendants. (*Id.* at ¶ 10)  Plaintiffs allege that Defendants orchestrated a fraudulent Ponzi scheme and instead of fulfilling their end of the Mining Contract, Defendants misappropriated customer funds for

themselves and used new customer funds to pay out earlier customers, falsely creating the appearance of a prosperous business. (*Id.* at ¶ 1)  Plaintiffs assert that in soliciting the unregistered securities to the Plaintiffs and the Class, Defendants made fraudulent statements in promotions about the returns that investors would receive, as well as the true use of the money paid for Mining Contract packages. (*Id.* at ¶ 6)

The FAC alleges five counts: Count I asserts claims for the offer and sale of unregistered securities in violation of Section 5 and Section 12(a)(1) of the Securities Act; Count II and IV assert claims of joint and several liability against any individual who controls a person or entity who has violated securities law, pursuant to Section 15 of the Securities Act and Section 20(a) of the Exchange Act, respectively; Count III asserts violations of §10(b) of the Exchange Act and Rule 10b-5; and Count V alleges Unjust Enrichment. (D.I. 34 at ¶¶ 140–73)

## II. LEGAL STANDARD

### A. Personal Jurisdiction

Rule 12(b)(2) of the Federal Rules of Civil Procedure permits a party to move for dismissal based upon the lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2).  Although Rule 8 does not require a plaintiff to set forth in the complaint "the grounds upon which the court has personal jurisdiction over the defendant," *Hansen v. Neumueller GmbH*, 163 F.R.D. 471, 474 (D. Del. 1995), "once a defendant has raised a jurisdictional defense, a plaintiff bears the burden of proving by affidavits or other competent evidence that jurisdiction is proper." *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996).  But if the district court does not hold an evidentiary hearing, the court should resolve any factual disputes in the plaintiff's favor and should deny the motion if the plaintiff's evidence establishes "a prima facie case of personal

jurisdiction." *Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 155 (3d Cir. 2010).

To exercise personal jurisdiction over a defendant, a court generally must answer two questions: one statutory and one constitutional. *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 258–59 (3d Cir. 1998). As to the statutory inquiry, federal district courts ordinarily follow the long-arm statute of the state where the court sits in determining the bounds of their jurisdiction over persons. *Id.* at 259 (citing Fed. Rule Civ. Proc. 4(k)(1)(A) and holding service of process is effective to establish personal jurisdiction over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located").

If the long-arm statute is satisfied, then the constitutional inquiry asks whether exercising jurisdiction comports with the Due Process Clause of the U.S. Constitution. *Id.* Due Process is satisfied where the court finds the existence of "certain minimum contacts" between the defendant and the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). A defendant's "contacts" with the forum state give rise to two types of personal jurisdiction, general and specific. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923–24 (2011). General jurisdiction is sometimes referred to as "all-purpose" jurisdiction and specific jurisdiction is referred to as "case-linked" jurisdiction. *Truinject Corp. v. Nestle Skin Health, S.A.*, 2019 WL 6828984, at *8 (D. Del. Dec. 13, 2019) (quoting *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cnty.*, 582 U.S. 255, 262 (2017)).

5

Whereas specific jurisdiction focuses on the relationship between a defendant's challenged conduct and the forum State, general jurisdiction focuses on the defendant's substantial presence in the State irrespective of the location of the challenged conduct. "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Daimler AG v. Bauman*, 571 U.S. 117, 128 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)).

However, for an action brought under the Securities Exchange Act of 1934, the analysis changes because 15 U.S.C. § 78aa of the Exchange Act 'provides for nationwide service of process.' *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 368–69 (3d Cir. 2002). When a federal statute provides for nationwide service of process, it becomes the statutory basis for personal jurisdiction. *See* 15 U.S.C. § 78aa. Thus, the analysis then focuses on whether the nonresident defendant has had sufficient minimum contacts with the United States not the forum state. *Pinker*, 292 F.3d at 368–69. If the defendant is located in the United States, that defendant will nearly always have sufficient minimum contacts with the United States to support personal jurisdiction over the defendant. *Id.*

## B. Insufficient Process & Insufficient Service of Process

A defendant may move to dismiss a complaint for insufficient process under Federal Rule of Civil Procedure 12(b)(4) or insufficient service of process under Rule 12(b)(5). *See* Fed. R. Civ. P. 12(b)(4)–(5). A defendant may move to dismiss a claim if the plaintiff does not properly serve the defendant with process. Fed. R. Civ. P. 12(b)(5). "In resolving a motion under Rule 12(b)(5), the party making service has the burden of demonstrating its validity when an objection

to service is made." *Martin v. OSHA*, 2017 WL 1326212, at \*2 (E.D. Pa. Apr. 11, 2017); *Grand Entm't Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 488 (3d Cir. 1993).

Service of process is governed by Federal Rule of Civil Procedure 4(e), which requires compliance with state law service requirements in the state where the district court is located or by personal service on the defendant, or an adult residing with the defendant, or defendant's agent authorized by law to accept service. Fed. R. Civ. P. 4(e). Rule 4 also requires the plaintiff to serve the summons and complaint within 90-days of filing of the complaint. Fed. R. Civ. P. 4(m). If service is not completed within that time, "the court . . . must dismiss the action without prejudice against that defendant or order that service be made within a specified time." *Id.*

In determining how to proceed in a case where the plaintiff has failed to serve a defendant within the time period in Rule 4(m), courts conduct a two-step inquiry. *See Boley v. Kaymark*, 123 F.3d 756, 758 (3d Cir. 1997) (citing *Petrucelli v. Bohringer and Ratzinger*, 46 F.3d 1298, 1305 (3d Cir. 1995)). First, the court "determines whether good cause exists for a plaintiff's failure to effect timely service." *Boley*, 123 F.3d at 758. If good cause exists, the court must extend the time for service. *Id.* In determining whether good cause exists, the court's "primary focus is on the plaintiff's reasons for not complying with the time limit in the first place." *Id.* (quoting *MCI Telecomm. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1097 (3d Cir. 1995)). Second, if good cause does not exist, then "the [ ] court must consider whether to grant a discretionary extension of time." *Id.* In exercising this discretion, the court may consider "actual notice of the legal action; prejudice to the defendant; the statute of limitations on the underlying causes of action; the conduct of the defendant; and whether the plaintiff is represented by counsel, in addition to any other factor that may be relevant." *Chiang v. U.S. Small Bus. Admin.*,

331 F. App'x 113, 116 (3d Cir. 2009) (citing Fed. R. Civ. P. 4(m) Notes of Advisory Committee on 1993 Amendments).

### C. Failure to State a Claim

Rule 12(b)(6) permits a party to seek dismissal of a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). To state a claim pursuant to Rule 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, the complaint must set forth sufficient factual matter, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). In assessing the plausibility of a claim, the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). A claim is facially plausible when the factual allegations allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 663; *Twombly*, 550 U.S. at 555–56.

The court's determination is not whether the non-moving party "will ultimately prevail," but whether that party is "entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal citations and quotation marks omitted). This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the necessary element]." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at

556).  "[A] complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits."  *Id.* at 231.

Claims under Section 10(b) of the Exchange Act and Rule 10b-5 are subject to the heightened pleading standard of the Private Securities Litigation Reform Act ("PSLRA"), which effectively subsumed the particularity requirement of Rule 9(b).  *Institutional Invs. Grp. v. Avaya, Inc.*, 564 F.3d 242, 253 (3d Cir. 2009).  The heightened pleading standard of the PSLRA requires a plaintiff to (1) "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading;" and (2) "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  *Tellabs*, 551 U.S. at 321 (quoting 15 U.S.C. § 78u-4(b)(1)–(2)).

## III. DISCUSSION

### A.  Motions to Dismiss for Lack of Personal Jurisdiction (Vo & Gao)

At the outset, Defendants Vo and Gao argue that none of the elements for general or specific jurisdiction over them are satisfied under the Delaware long-arm statute.  10 *Del. C.* § 3104(c)(1)–(4).   Vo and Gao further allege that even if jurisdiction did exist under the statute, it would violate due process.  (D.I. 42 at 10–11; D.I. 44 at 6)[3]  Defendants Vo and Gao further

---

[3] Delaware's long-arm statute authorizes the exercise of jurisdiction over a non-resident who in person or through an agent: (1) transacts any business or performs any character of work or service in the State; (2) contracts to supply services or things in this State; (3) causes tortious injury in the State by an act or omission in this State; (4) causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State.  10 *Del. C.* § 3104(c)(1)–(4). Subsections (c)(1) through (c)(3) authorize the exercise of specific jurisdiction while subsection (c)(4) authorizes general jurisdiction.  Only general jurisdiction allows a plaintiff's cause of action to be "unrelated to the defendant's activities in the forum state."  *Rocke v. Pebble Beach Co.*, 541 F. App'x 208, 210 (3d. Cir. 2013).

attempt to distance themselves from the Delaware VBit corporate entities through affidavits which explain their arguably limited roles at the now defunct companies. (D.I. 21; D.I. 44-1)

Vo cites to a previously submitted Declaration which attached her "Employment Contract" with VBit Technologies Corp., identifying her as a "Operations Director." (D.I. 21) Vo argues on this basis that her employment duties were those of an administrative assistant and not consistent with those of an executive, director, member, officer, or manager of the VBit entities. (D.I. 42 at 5–6) Vo further states that she cannot be held liable as the ex-spouse of VBit founder, Don Vo, solely based upon their former marital status. (*Id.* at 9–10)

Gao likewise submits an affidavit stating that despite holding the titles of "Vice Chairman" with Advanced Mining and "Vice President of Marketing" with VBit Technologies Corp., those were merely "marketing titles" that reflected Gao's sales of Mining Contracts. (D.I. 44-1 at ¶¶ 3–6) Gao states that at no time was he a director, officer, member, manager, or owner of VBit, and therefore his employment with VBit was outside of the scope of Delaware's long-arm statute. (*Id.*)

In opposition, Plaintiffs correctly point out that the claims in the FAC are brought under the Securities Act and the Exchange Act, which allow for nationwide service of process. (D.I. 53 at 6) The Exchange Act provides for nationwide service of process and permits the exercise of personal jurisdiction to the limit of the Fifth Amendment's Due Process Clause. *Pinker*, 292 F.3d at 369. Courts within this Circuit have found this provision to mean that personal jurisdiction exists even if the defendant lacks specific contacts with the district court where the plaintiff brings the claim as long as the defendant has sufficient contacts with the United States. *See id.* Therefore, the analysis centers on whether Defendants Vo and Gao have minimum contacts with the United States, not Delaware.

Here, Vo and Gao have sufficient minimum contacts with the United States as they have affirmatively stated in separate affidavits that they both reside within the Commonwealth of Pennsylvania. (D.I. 44-1 at ¶ 2; D.I. 21-1 at ¶ 2)  Accordingly, both Defendants are subject to personal jurisdiction in this court. *In re Auto. Refinishing Paint Antitrust Litig.*, 358 F.3d 288, 298 (3d Cir. 2004) ("[T]his Court has held broadly that a federal court's personal jurisdiction may be assessed on the basis of the defendant's national contacts when the plaintiff's claim rests on a federal statute authorizing nationwide service of process.").  Furthermore, requiring these Defendants to litigate in Plaintiffs' chosen forum is not unconstitutionally burdensome and neither Defendant has made such an argument.

In her reply brief, Vo does not address Plaintiffs' argument that she has sufficient minimum contacts with the United States, which allows this court to exercise personal jurisdiction over her.  Therefore, she has waived her personal jurisdiction argument. *See Progressive Sterilization, LLC v. Turbett Surgical LLC*, 2020 WL 3071951, at *2 (D. Del. June 10, 2020) (explaining that, "as a practical matter," when "a party merely states an argument in conclusory fashion in its opening brief and then files a reply brief but does not contest in that brief the specific rebuttal points made in the answering brief, a court may rightly conclude that the party implicitly conceded those points.").  Vo's argument that, "Plaintiffs concede that the Exchange Act does not extend to State law claims such as Count 5, [Unjust Enrichment] as alleged against Ms. Vo and thereby lacking personal jurisdiction" lacks merit, is unsupported by any case authority, and fails to acknowledge that Count V arises from the same operative facts as the allegations under the federal securities laws.  (D.I. 58 at 4)

Gao acknowledges in his reply brief that nationwide service of process exists under the Securities Act and the Exchange Act, 15 U.S.C. § 78aa, but he implausibly continues to maintain that the court nonetheless lacks personal jurisdiction. (D.I. 57 at 1)

In summary, Defendants Vo and Gao focus on arguing that this court lacks personal jurisdiction over them because they do not have sufficient minimum contacts with the State of Delaware and Delaware's long-arm statue is not satisfied. This is the wrong analysis. The Defendants had an opportunity to allege facts as to why litigation in this court would violate their due process rights in their reply briefs, but made no such meaningful response after Plaintiffs correctly pointed the proper analysis to them. Accordingly, I recommend the court **DENY** Vo and Gao's motions to dismiss for lack of personal jurisdiction.

### B. Insufficiency of Process (Gao)

Defendant Gao mistakenly moves for dismissal under Federal Rule of Civil Procedure 12(b)(4) which allows a court to dismiss an action for insufficient process. Fed. R. Civ. P. 12(b)(4). Instead, his argument challenges the manner in which he was served and does not allege deficiencies in the process i.e., summons or complaint. Therefore, his arguments actually invoke Federal Rule of Civil Procedure 12(b)(5), for insufficiency of the service or process and not 12(b)(4). *See Ayres v. Jacobs & Crumplar, P.A.,* 99 F.3d 565, 569 (3d Cir. 1996) (stating under 12(b)(4) if a summons fails to properly name the parties pursuant to Rule 4(a), it is void.); *Wright & Miller,* 5B Fed. Prac. & Proc. Civ. § 1353 ("A Rule 12(b)(5) motion is the proper vehicle for challenging the mode of delivery or the lack of delivery of the summons and complaint."). Gao further argues that the 90-day time limit for service under Rule 4(m) has long since expired so the defect cannot be cured. Fed. R. Civ. P. 4(m). In opposition, Plaintiffs state

the manner in which the complaint was served was sufficient and alternatively cross-move for additional time to effectuate service.

On March 17, 2023, Plaintiffs filed a Return of Service, of the original summons and complaint. (D.I. 6)  The affidavit of the process server states that on March 7, 2023, he personally served Jin Gao at his residence. (*Id.*)  Subsequently, on April 5, 2023, Gao's counsel emailed Pelham's counsel, who filed the Return of Service, informing counsel that Gao was not personally served. (D.I. 44 at 3)  Gao's counsel did not receive a response from Pelham's counsel. (D.I. 44 at 7)

Gao argues that dismissal is proper as the complaint was not properly served by the process server on March 7, 2023. (D.I. 44 at 3)  Gao asserts the Ring doorbell camera video footage shows the process server leaving the complaint and summons at the doorstep without delivering them to anyone in the residence. (*Id.*)  The video footage allegedly demonstrating a defect in service of process has not been entered on the public docket for this case.  There is no link to the video in Gao's brief or affidavit so there is no means to access it on the public docket. Moreover, in his affidavit, Gao interprets what he believes the video shows but does not provide any reference to the particular segment of the video by timestamp or any other reference guidepost.  In summary, the video has not been properly submitted for consideration by the court.[4]

In opposition, Plaintiffs counter Gao's claims with their own account of what the doorbell video footage shows.  Plaintiffs contend that service was perfected because the video shows the process server speaking and showing the papers to an individual inside of Gao's home outside of

---

[4] Gao delivered a USB drive to the court without a notice of service and without identifying anything about it on the public docket to authenticate it or confirm delivery to the court and the parties.

the camera frame.  Plaintiffs state that after the process server showed the documents to

Defendant, he left the papers on the doorstep.  (D.I. 51 at 6)

Gao states in his affidavit that he could not have accepted service of the complaint

because he does not answer the door unless he is expecting a guest.  (D.I. 44-1 at ¶ 15)  Gao

further states because he receives other package deliveries throughout the day, he would not

likely respond to someone ringing his doorbell.  (*Id.*)  Accordingly, Gao argues service of

process is deficient.

Gao does not dispute that the affidavit of the process server accurately describes Gao.

(D.I. 57 at 1–4)  Considering the competing affidavits submitted by both parties, the Court must

resolve any factual conflicts in Plaintiffs' favor.  *Senju Pharm. Co., Ltd. v. Metrics, Inc.*, 96 F.

Supp. 3d 428, 445 (D.N.J. 2015) (holding the court must "accept the uncontroverted allegations

in the plaintiff's complaint as true and resolve any factual conflicts in the affidavits [and other

written materials] in the plaintiff's favor[]" on a motion to dismiss for lack of personal

jurisdiction).

On July 27, 2023, Gao was served with the FAC filed after the appointment of Lead

Plaintiff McKeller.  (D.I. 37)  The "Proof of Service" as to Gao was filed on the docket on

October 25, 2023.  (D.I. 18 at 6)  This Proof of Service indicates that Gao was served through

Legalinc Corporate Services, ("Legalinc") the registered agent for VBit Technologies Corp..

(*Id.*)  Gao argues that such service is ineffective because Gao is not, and never has been, an

officer or director of VBit Technologies Corp. and accordingly, service of process on the

registered agent is not effective.  (D.I. 44 at 3)  Nonetheless, according to his affidavit, Gao

admits serving initially as Vice President of Marketing and then as Vice Chairman of VBit

Technologies.  (D.I. 44-1 at ¶¶ 3–4)

14

The Third Circuit holds that "[i]f the defendant attempts to evade service or refuses to accept delivery after being informed by the process server of the nature of the papers, it usually is sufficient for the process server … simply to leave them in the defendant's physical proximity, as Rule 4 guards the objective of giving notice to the party to be served." *Gambone v. Lite-Rock Drywall Corp.*, 124 F. App'x 78, 79 (3d Cir. 2005) (cleaned up); *Swiderski v. Frabizzio*, 2023 WL 112088, at *2 (D. Del. Jan. 5, 2023) (same). Gao effectively admits there is no likelihood he would accept personal service because he states in his sworn affidavit, "I usually do not answer the door when the doorbell rings unless I am expecting someone." (D.I. 44-1 at ¶ 15)

The court recommends that service of process was perfected on Gao when he was personally served at his residence with the original complaint on March 17, 2023, and when he was subsequently served with the FAC as Vice Chairman of VBit Technologies Corp., through VBit's registered agent Legalinc, on October 25, 2023. Gao has notice of this suit. It would exalt form over substance to require Plaintiffs to make further attempts at personal service on Gao who admitted he does not answer his doorbell unless he is expecting a guest.

Accordingly, I recommend the court **DENY** Gao's motion to dismiss for improper service. Likewise, I recommend the court **DENY** as moot Plaintiffs' cross-motion to allow alternative service.

### C. Defendant Tu's Motion to Dismiss

*Pro Se* Defendant, Sean Tu, has filed a motion to dismiss which the court interprets as seeking also to set aside the default in appearance entered on November 7, 2024, due to insufficiency of service of process, pursuant to Rule 12(b)(5). In reply, Tu requests the court consolidate this action with *Dettmering v. VBit Technologies*, C.A. No. 22-1482, ("*Dettmering*"), clarify whether the mining contracts are securities, or alternatively, stay the proceedings in this

case until the *Dettmering* matter is resolved.  (D.I. 68)  Because Defendant Tu proceeds *pro se*, his motion is liberally construed.  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).

Tu argues that because Plaintiffs' request for alternative service was denied by the court on August 13, 2024, that a defect in service existed and requires dismissal of this suit.[5]  Tu contends that he did not receive notice of this lawsuit until November 18, 2024, when a copy of the entry of his default in appearance was delivered to him by a parcel service.  (D.I. 68 at 3)  Tu moves to vacate the default in appearance and dismiss the claims against him in their entirety, or, alternatively, to require the Plaintiff to serve him with process in accordance with Rule 4.

Additionally, Tu seeks a determination by the court that the pending case does not involve securities fraud because of rulings in a companion case *Dettmering v. VBit Technologies*. In *Dettmering*, different Plaintiffs are pursuing claims for the alleged Ponzi scheme against the same Defendants, pursuant to a theory of civil liability under the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1964(c).  (D.I. 66 at 5)[6]  Tu's factual challenges to the allegations in the FAC based upon comparison with the allegations in *Dettmering* cannot properly be considered by the court at the motion to dismiss stage.

In response, the Plaintiff correctly points out that the original complaint was properly served upon Tu as an officer of the VBit Technologies Corp., through service on the registered

---

[5] This is not an accurate interpretation of the docket entries.  The request for alternative service related only to Vo's motion as no other Defendants had filed a motion.  Vo's motion and Plaintiffs' cross motion became moot after leave was granted to the Plaintiffs to file the FAC. (D.I. 33 at 3)

[6] The Reports and Recommendations referred to in this case are: *Dettmering v. VBit Technologies*, C.A. No. 22-1482 2023, WL 4824955 (D. Del. July 27, 2023) *report and recommendation adopted*, 2023 WL 6211243 (D. Del. Sept. 25, 2023) ("*Dettmering I*") and *Dettmering v. VBit Technologies*, C.A. No. 22-1482, 2024 WL 3617604 (D. Del. Aug. 1, 2024) *report and recommendation adopted*, 2023 WL 4723250 (D. Del. Nov. 8, 2024) ("*Dettmering II*").

agent Legalinc.  The docket reflects that the summons for service of the original complaint was executed on July 27, 2023.  (D.I. 18 at 8)  The original complaint avers that Tu was Chief Technology Officer of VBit Tech and VBit Mining (both are Delaware corporations), and that he is Chief Operating Officer of Advanced Mining.  The FAC contains the same allegations against him.  (D.I. 34)

As an officer of a Delaware corporation, i.e., VBit Technologies Corp., Tu is subject to service of process through service on the company's registered agent, pursuant to 10 Del. C. § 3114 (providing for the service of process on non-resident directors of Delaware corporations, "in any action or proceeding against such director, trustee or member for violation of a duty in such capacity, whether or not the person continues to serve as such director, trustee or member at the time suit is commenced.").  In this case, Tu does not dispute that he was an officer or director of VBit Technologies.  (D.I. 68 at 3) and while the lawsuit was brought after Tu had stepped down as an officer, the allegations in the FAC relate to his conduct while at VBit.  (*See* D.I. 34)  As such, Tu was properly served when service was effectuated upon VBit's registered agent.  *Thompson v. Target Stores*, 501 F. Supp. 2d 601, 603 (D. Del. 2007) (holding service of process was proper through the company's registered agent for allegations of misconduct that occurred while he served as an officer); 8 Del. C. § 321.

Tu's opening brief does not address nor challenge the sufficiency of service of process of the original complaint.  He argues that service is defective because he received the FAC by mail at his residence in Eagan, Minnesota.  (D.I. 37 at 2)  However, once service of the original complaint is perfected, the Federal Rules of Civil Procedure permit service by mail of subsequent pleadings in the case.  Thus, service by mail of the FAC was not improper under Fed. R. Civ. P. 5(a) and (b). Fed. R. Civ. P. 5(a)(1)(B)

17

In his reply brief, Tu asserts new grounds relief.  Even if the court liberally considers Tu's arguments because he is a *pro se* Defendant, they do not warrant setting aside the default judgment and dismissing the claims asserted against him.  (D.I. 68 at 2–3)  In his reply brief, Tu moves for consolidation of this case with *Dettmering* and/or a stay of the pending case pending the outcome of *Dettmering*.  Such motions have not been properly docketed nor briefed, so the court will not address them.

Accordingly, I recommend the court **DENY** Tu's motion to dismiss for insufficiency of process.

### D. Motion to Dismiss for Failure to State a Claim (Vo)

Vo alternatively moves to dismiss the FAC based on improper group pleading under Rule 8(a) and failure to state a claim for which relief may be granted pursuant to Rule 12(b)(6).  (*See* D.I. 42)

#### 1. Group Pleading

Vo alleges that the FAC should be dismissed under Rule 8(a) because each defendant is "lumped" together in a group and identified as Company Defendants, Individual Defendants, or Defendants.  Thus, the FAC fails to provide notice to Vo of the specific claims asserted against her.  (D.I. 42 at 18)  Plaintiffs respond that the FAC identifies which claims are brought against Vo and identifies specific conduct which is alleged against her.

To satisfy Rule 8(a), the FAC must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Phillips*, 515 F.3d at 231 (internal quotation marks and citations omitted).

Here, Vo raises similar arguments on the same facts which were rejected by the court in *Dettmering II. Dettmering v. VBit Technologies*, C.A. No. 22-1482, 2024 WL 3617604, at *6

18

(D. Del. Aug. 1, 2024) *report and recommendation adopted*, 2023 WL 4723250 (D. Del. Nov. 8, 2024). The FAC sufficiently alleges involvement in and knowledge of the allegedly fraudulent scheme and pleads specific factual allegations describing Vo's role in the conduct at issue.

The FAC describes Vo was an integral part of VBit's formation and development because she inspired her ex-husband, Don Vo, to launch the cryptocurrency mining business. (*Id.* at ¶ 31) During a speaking engagement in 2019, Vo provided detailed information about the company's sales and the types of packages being purchased, demonstrating her understanding of the company's operations. (*Id.* at ¶ 54) Vo held the title of "Operations Director" and oversaw the training of the administrative support team responsible for engaging with customers. (*Id.* at ¶ 31) Vo is alleged to have been the primary contact between customers and VBit making her "responsible for misrepresentations made to customers by the VBit support team to maintain the fraudulent scheme." (*Id.* at ¶ 55) Moreover, it is alleged that Don Vo paid large sums of cryptocurrency from a VBit account used to control assets to an account used by Vo around the same time of the purported sale of VBit to Advanced Mining in early 2022. (*Id.* at ¶ 56) These allegations are sufficient to put Vo on notice of the allegations of her individually culpable conduct. *See Phillips*, 515 F.3d at 232 (explaining that the complaint must contain sufficient factual allegations to provide fair notice and also the grounds on which the claim rests). Accordingly, I recommend the court **DENY** Vo's motion to dismiss for failure to state a claim for violation of Rule 8(a).

### 2. Unregistered Sale of Securities (Count I)

Regarding Count I, Unregistered Offer and Sale of Securities in Violation of Section 5 and Section 12(a)(1) of the Securities Act, Vo argues the FAC makes conclusory statements that do not demonstrate Vo allegedly "directed and/or authorized, directly or indirectly, the sale and

solicitation of Mining Contract investments to the public." (D.I. 42 at 19)  In response, the Plaintiffs argue that the FAC asserts facts supporting Vo's role in the sale of the Mining Contracts.

Plaintiffs and Defendants both rely on *Pinter v. Dahl*, 486 U.S. 622, 651 (1987) and *In re Craftmatic Sec. Litig.*, 890 F.2d 628, 636 (3d Cir. 1989).  In *Pinter*, the court determined liability under section 12(a)(1) extends to "persons who pass title and persons who 'offer,' including those who 'solicit' offers" and does not impose liability "for mere participation in unlawful sales transactions [because] Congress did not intend . . . [to] impose liability on participants' collateral to the offer or sale." *Pinter*, 486 U.S. at 652.

Further, *Pinter* states "a person who solicits the purchase will have sought or received a personal financial benefit from the sale . . . . But a person who solicits the buyer's purchase in order to serve the financial interests of the owner may properly be liable under § 12[(a)](1) without showing that he expects to participate in the benefits the owner enjoys." *Id.*

*Pinter* determined that solicitation of a buyer is included under section 12(a)(1) as "solicitation of a buyer is perhaps the most critical stage of the selling transaction." *Id.* at 646. The solicitation step occurs when information available to customers is being controlled and disseminated for purpose of a sale, therefore, the persons disseminating such information are solicitors subject to section 12(a)(1). *Id.*

Turning to *In re Craftmatic Sec. Litig.*, the court adopted *Pinter* holding, "liability under § 12[(a)](2) extends not only to those who pass title to the purchaser, but also to those who successfully solicit the purchase, motivated by their own or the securities owner's financial interests." 890 F.3d 628, 636 (3d Cir. 1989).  In doing so, *Pinter* recognized liability does not extend to "persons whose actions were merely a 'substantial factor' in causing the purchase." *Id.*

20

As to Vo, the FAC alleges that she solicited Mining Contracts to the general public and they would eventually become VBit customers. (D.I. 34 at ¶ 31) The FAC alleges that Vo was tasked with training the customer relations department and was "the main interface between VBit and customers and was responsible for misrepresentations made to customers by the VBit support team to maintain the fraudulent scheme." (D.I. 34 at ¶ 55) These allegations, taken as true at the motion to dismiss stage, sufficiently allege Vo's participation in the offer and sale of unregistered securities in violation of the Securities Act in Count I.

### 3. Control Person Liability (Counts II and IV)

Counts II and IV of the complaint allege a cause of action for control person liability under Section 20(a) of the Exchange Act, which allows a plaintiff to assert a derivative cause of action against individuals who exercise control over a "controlled person," including a corporation, that has violated Section 10(b). 15 U.S.C. § 78t(a). For control person liability claims, the plaintiff must simply prove that one person controlled another person or corporate entity and that the controlled person or entity committed a primary violation of the securities laws. *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 284 (3d Cir. 2006).

To state a claim for control person liability under Section 15 Securities Act and Section 20(a) of the Exchange Act, a plaintiff must allege the following: (1) a primary violation of the federal securities laws by a controlled person or entity; (2) control of the primary violator by the defendant; and (3) that the controlling person was in some meaningful way a culpable participant in the primary violation. *In re Reliance Sec. Litig.*, 91 F. Supp.2d 706, 731 (D. Del. 2000) (citing *Boguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d Cir. 1998)).

A person's status alone is ordinarily insufficient to establish control person liability. *Wool v. Tandem Computs. Inc.,* 818 F.2d 1433, 1441 (9th Cir. 1987); *see also Wanetick v. Mel's*

*of Modesto, Inc.*, 811 F. Supp. 1402, 1407 (N.D. Cal. 1992) ("[m]ere titles are not adequate indicators of control authority."). "If no controlled person is liable, there can be no controlling person liability." *Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 279 (3d Cir. 1992).

Plaintiffs allege that Vo controlled the main interface through which VBit interacted with its customers. (D.I. 34 at ¶ 55) Plaintiffs further allege that Vo, in her role as Operations Director, trained and oversaw the administrative support team, and caused the false and misleading statements to be disseminated via the VBit website. (*Id.* at ¶ 31) Defendants further allege that, "Vo exercised control over the Company Defendants and directed and/or authorized, directly or indirectly, the sale and solicitation of Mining Contract investments to the public." (*Id.*) Therefore, Plaintiffs have plausibly alleged that Vo controlled, directly or indirectly, VBit in furtherance of the securities violations.

As a final point, Vo argues that Plaintiffs have not sufficiently alleged Section 15 or Section 20(a) claims because Plaintiffs have failed to allege Vo's culpable participation. Decisions from courts within this Circuit are split as to whether culpable participation must be pled in a complaint to withstand a motion to dismiss. *See Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 484 n.20 (3d Cir. 2013); *see also Dutton v. Harris Stratex Networks, Inc.*, 270 F.R.D. 171 (D. Del. 2010). This district's most recent ruling on the issue stated that allegations of culpable conduct are necessary at the motion to dismiss stage. *Zazzali v. Alexander Partners, LLC*, 2013 WL 5416871, at *11 (D. Del. Sept. 25, 2013). Even accepting Defendants' argument that culpable participation must be pled in the complaint, this court finds that Plaintiffs have done so.

The degree of neglect alleged by Plaintiffs is one of a Ponzi scheme, funneling of funds from investors, into unregistered securities offerings and for ultimately no product, despite

Defendants' repeated representations. This allegation on its face implicates the culpability of VBit leadership. Vo argues that Plaintiffs improperly rely on her marriage to Don Vo to demonstrate she is a control person. However, Plaintiffs allege control that Vo herself exercised over VBit and VBit personnel. Vo made herself out to be as important as the CEO during a public event. (D.I. 34 at ¶ 54) Plaintiffs allege Vo disseminated misrepresentations to customers via VBit's website. (*Id.* at ¶ 55) Plaintiffs further allege that Vo was the individual responsible for VBit's customer support and public messaging. (*Id.*) Given all of these factual allegations, Plaintiffs have adequately pled that Vo was a control person within the meaning of Sections 15 and 20(a) of the Securities Act and Exchange Act, respectively.

### 4. Violation of §10(b) of the Exchange Act and Rule 10b-5 (Count III)

To state a claim for violation of Section 10(b) of the Exchange Act and Rule 10b-5 at Count I of the complaint, Plaintiffs must plead "(1) a material misrepresentation or omission, (2) scienter, (3) a connection between the misrepresentation or omission and the purchase or sale of a security, (4) reliance upon the misrepresentation or omission, (5) economic loss, and (6) loss causation." *In re Hertz Glob. Holdings Inc.*, 905 F.3d 106, 114 (3d Cir. 2018) (internal quotation marks and citations omitted).

Vo challenges only the first (material misrepresentation) and second (scienter) elements under this Count. Vo addresses the loss causation element in the section of her brief seeking dismissal of the Unjust Enrichment Count.

Claims under Section 10(b) of the Exchange Act and Rule 10b-5 are subject to the heightened pleading standard of the PSLRA, which effectively subsumed the particularity requirement of Rule 9(b). *Avaya, Inc.*, 564 F.3d at 253. The heightened pleading standard of the PSLRA requires a plaintiff to (1) "specify each statement alleged to have been misleading [and]

the reason or reasons why the statement is misleading;" and (2) "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Tellabs*, 551 U.S. at 321 (quoting 15 U.S.C. § 78u-4(b)(1)–(2)).

In addressing scienter, the inquiry is "whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Tellabs*, 551 U.S. at 323. The court "must consider plausible, nonculpable explanations for the defendant's conduct [. . .] [t]he inference that the defendant acted with scienter need not be irrefutable, *i.e.,* of the smoking-gun genre, or even the most plausible of competing inferences[.]" *Id.* at 324. The inference of scienter only needs to be "cogent and at least as compelling as any opposing inference one could draw from the *facts alleged*." *Id.* (emphasis added).

Based upon the discussion of the facts alleged in the FAC, and section IV.D.2–3, *supra*, the material misrepresentation and scienter elements are satisfied. While Vo attempts to distance herself from the company and states her role was only one of an administrator, her public comments, including those made in her speech at a 2019 VBit Tech gala, negate this assertion. (*See* D.I. 34 at ¶ 54) Additionally, Plaintiffs allege that Vo received significant sums in cryptocurrency from a VBit account used to control assets at around the same time VBit was sold to Advanced Mining. (*Id.* at ¶ 56) Taken as a whole, a strong inference of scienter exists.

"To impose a stricter standard at the pleading stage 'would make virtually impossible a plaintiff's ability to plead scienter in a financial transaction involving a corporation, institution, bank or the like that did not involve specifically greedy comments from an authorized corporate individual.'" *In re Reliance Sec. Litig.*, 91 F. Supp. 2d at 725 (quoting *Press v. Chemical*

*Investment Services Corp.,* 166 F.3d 529, 538 (2d Cir.1999)). The factual allegations in the complaint are sufficient to meet the pleading standard.

### 5.  Unjust Enrichment  (Count V)

With respect to Count V, Unjust Enrichment, Vo argues that Plaintiffs have not pled any elements of unjust enrichment, that no enrichment occurred, and that losses on investment cannot be attributed to Vo.  (D.I. 42 at 23)

The elements of unjust enrichment in Delaware are, "(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law." *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010).  (D.I. 42 at 22–23)  Vo's conclusory arguments combined in a single paragraph in her opening brief are insufficient to warrant dismissal of the Unjust Enrichment claim.  Vo asserts, without any citation to authority, that investments in cryptocurrency are not within the control of the Defendants and not within her control as an administrative employee. But the allegations in the FAC, when viewed in the light most favorable to the Plaintiffs, sufficiently plead Vo's involvement in an alleged Ponzi scheme to defraud investors, proximately causing their economic loss.

Accordingly, I recommend the court **DENY** Vo's motion to dismiss for failure to state a claim.

## IV. CONCLUSION

For the reasons discussed above, I recommend that the court **DENY** Vo, Gao and Tu's motions to dismiss (D.I. 42; D.I. 44; D.I. 66) and **DENY** as moot Plaintiffs' cross motion to extend time for service upon Defendant Gao.  (D.I. 51)

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1.  The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b).  The objections and responses to the objections are limited to ten (10) pages each.  The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the district court.  *See Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987); *Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006).

The parties are directed to the court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated March 7, 2022, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: March 28, 2025

Sherry R. Fallon
UNITED STATES MAGISTRATE JUDGE